Maurice J. **WAGENER**, Respondent,

v.

John S. **McDONALD**, et al., Appellants.

No. C5–93–804.

Court of Appeals of Minnesota.

Dec. 7, 1993.

William L. Lucas, Harvey, Thorfinnson & Lucas, P.A., Eden Prairie, for respondent.

Paul C. Peterson, William L. Davidson, Lind, Jenson & Sullivan, P.A., Minneapolis, Lewis A. Remele, Jr., Charles E. Lundberg, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for amicus curiae Minnesota State Bar Ass'n.

Considered and decided by AMUNDSON, P.J., and FORSBERG and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

John S. McDonald contends the district court erred when it determined that legal malpractice claims are assignable and denied summary judgment. The district court certified the question as important and doubtful to this court. We answer the certified question in the affirmative.

## FACTS

Paul and Maria Scherber retained John McDonald as their attorney in September 1987. McDonald commenced a land registration action regarding property owned by the Scherbers in Washington County. The district court's order and decree of registration reflected a 1934 highway easement in favor of the State of Minnesota. This easement restricted billboards and advertising devices on the property within 100 feet of the highway right of way.

The Scherbers sold this property on a contract for deed to Mark Saliterman. Saliterman later sued the Scherbers, Wagener, and three other parties to recover liquidated damages as set forth in the contract for deed. The main issue in that lawsuit was whether the property was "marketable" as defined in the contract for deed, given the state's easement. The district court entered judgment against the Scherbers for $650,000 as liquidated damages under the contract for deed. This court affirmed the district court on November 28, 1990. The supreme court denied review.

On October 1, 1991, the Scherbers assigned to Wagener all their rights in any claims against McDonald. The assignment was a settlement of all claims that Wagener had against the Scherbers.

Wagener began this action in June 1992, arguing that McDonald was negligent for failing to make title to the property "marketable." It is undisputed that Wagener and McDonald never had an attorney-client relationship. McDonald moved for summary judgment, arguing that legal malpractice claims are not assignable. The district court denied the motion, holding that because legal malpractice claims meet the survival test of Minn.Stat. § 573.01 (1992), they are assignable. McDonald then moved to have the question "Whether the assignment of a legal malpractice claim is contrary to Minnesota's public policy?" certified as important and doubtful. The district court granted this motion and stated:

> The assignability of legal malpractice claims has potentially serious implications for every attorney practicing in this state. This matter involves issues over the scope of an attorney's duty to others and the extent of the attorney-client relationship. This Court sees a very real and ominous possibility for collusion between disgruntled former clients and third parties against attorneys.

This appeal followed.

## ISSUE

Is the assignment of a legal malpractice claim contrary to Minnesota's public policy?

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

When a district court certifies a question to this court, we must make an independent determination whether the question is "important and doubtful." *National City Bank v. Lundgren*, 435 N.W.2d 588, 590 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 29, 1989). The importance of a question increases with the probability that resolution of the question will have statewide impact and the probability of reversal. *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 180 (Minn.1988). A question is doubtful if there is no controlling precedent and there is substantial ground for difference of opinion. *Id.* at 179–80.

Resolution of this question will have statewide impact because it will determine whether an assignee of a legal malpractice claim has a cause of action. While several foreign courts have addressed the question, no Minnesota case has decided the issue.[1] McDonald's position is consistent with a majority of foreign courts that have decided the issue. *See Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 827 P.2d 758, 764 (1992) (majority of courts have held that legal malpractice claims are not assignable). Wagener's position is consistent both with a minority of foreign courts and Minnesota's general rule regarding the assignability of legal claims. Thus, we conclude that the question is important and doubtful.

In Minnesota, any cause of action is assignable if it survives the death of the holder and does not arise out of personal injury. Minn.Stat. §§ 573.01–.02 (1992); *Peterson v. Brown*, 457 N.W.2d 745, 748 (Minn. App.1990), *pet. for rev. denied* (Minn. Aug. 23, 1990); *Johnson v. Taylor*, 435 N.W.2d 127, 128–29 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 19, 1989); *Jandera v. Lakefield Farmers' Union*, 150 Minn. 476, 479, 185 N.W. 656, 658 (1921). Thus, legal malpractice claims meet the general rule for assignability. Absent the creation of an ex-

ception for legal malpractice claims on public policy grounds, such claims would be assignable.

Wagener urges this court to decide that legal malpractice claims are assignable because they meet the survival test of Minn. Stat. § 573.01. We believe that this statutory test provides an inappropriate basis to resolve this question. Rather, we agree with the Indiana Supreme Court:

Today, it seems anachronistic to resolve the issue of the assignability of a legal malpractice claim by deciding whether such a claim would survive the client's death. * * * As is sometimes the case with the common law, the rule has outlived the reason for its creation. "The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of the centuries the custom, belief or necessity disappears, but the rule remains." Where such is the case, this Court has been willing to "reexamine the basis of the rule."

Assignment should be permitted or prohibited based on the effect it will likely have on modern society, and the legal system in particular.

*Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 341 (Ind.1991) (citations omitted). Thus, we consider issues of public policy rather than the statutory survival test to determine whether legal malpractice claims are assignable.

Likewise, we conclude that resolution on the question should not turn on whether a claim for legal malpractice is classified as a breach of contract claim or a personal injury. Rather than straining to fit the claim into a category it does not fit, the better approach is to resolve the question on public policy grounds. *See Scarlett v. Barnes*, 121 B.R. 578, 582 (Bankr.W.D.Mo.1990) ("Legal malpractice cannot be neatly pigeonholed as either a 'personal' or 'nonpersonal' tort."); *Jackson v. Rogers & Wells*, 210 Cal.App.3d 336, 258 Cal.Rptr. 454, 457 (1989) (noting the "hybrid contract-tort nature" of legal mal-

---

1. In *Peterson v. Brown*, 457 N.W.2d 745, 748 (Minn.App.1990), *pet. for rev. denied* (Minn. Aug. 23, 1990), this court addressed the assignability of fraud, negligence, and breach of contract claims arising from an insurance agent's and agency's failure to obtain requested insurance. Issues relating to the assignability of legal malpractice claims were neither raised nor decided in that case.

practice claims); *Christison v. Jones,* 83 Ill. App.3d 334, 39 Ill.Dec. 560, 563, 405 N.E.2d 8, 11 (1980) ("[T]he tort of legal malpractice does not fit well into categories previously established for determining assignability.").

We believe the assignment of legal malpractice claims is against Minnesota's public policy. First, allowing the assignment of legal malpractice claims would be incompatible with the attorney's duty to act loyally towards the client. *Picadilly,* 582 N.E.2d at 342. Second, assignment would be incompatible with the attorney's duty to maintain confidentiality. *Id.* at 343. Third, we must take into consideration the unique nature of legal services:

> "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity." * * * Thus, not only does the attorney owe the duty to use skill, prudence and diligence in the performance of the tasks he undertakes for his client but owes undivided loyalty to the interests professionally entrusted to him. Because of the inherent character of the attorney-client relationship, it has been jealously guarded and restricted to only the parties involved.

*Goodley v. Wank & Wank, Inc.,* 62 Cal. App.3d 389, 133 Cal.Rptr. 83, 86 (1976) (citations omitted).

Fourth, we recognize the risk of collusion in assignment situations. In *Coffey v. Jefferson County Bd. of Education,* 756 S.W.2d 155 (Ky.Ct.App.1988), the court struck down an assignment of a legal malpractice claim, in part because of the risk of collusion between assignor and assignee. In *Coffey,* the defendant in a negligence action assigned to the plaintiff a malpractice claim against the defendant's former attorney after defendant entered into an agreed judgment for damages with the plaintiff. *Id.* at 156. The court stated:

> [I]t appears to us that this transaction is so collusive that same should be held to be against public policy. This was the type of contrived and elaborate scheme that was denounced by the California court.

*Id.* at 157.

Last, we are persuaded by by the reasoning of the *Goodley* court:

The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship between attorney and client.

*Goodley,* 133 Cal.Rptr. at 87.

Moreover, the Indiana Supreme Court has noted that the attorney-client relationship is not like other commercial transactions:

> [T]he client-lawyer relationship is structured to function within an adversarial legal system. In order to operate within this system, the relationship must do more than bind together a client and a lawyer. It must also work to repel attacks from legal adversaries. Those who are not privy to the relationship are often purposefully excluded because they are pursuing interests adverse to the client's interests.

*Picadilly,* 582 N.E.2d at 343–44.

The authority cited by Wagener is unpersuasive. In two of the cases cited by Wagener, the courts decided that legal malpractice claims were assignable in certain narrow sit-

uations—not that all such claims are assignable. *See, e.g., Thurston v. Continental Cas. Co.,* 567 A.2d 922, 923 (Me.1989) (claim assignable where assignee had "an intimate connection with the underlying lawsuit" as stockholder of a corporation); *Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708, 711 (Tex.Ct.App.1992) (excess insurance carrier may be subrogated to insureds' claim for legal malpractice and negligence against primary insurance carrier), *review denied* (Tex. Dec. 16, 1992). In both these cases, the courts recognized that they were not creating a general rule. *See Thurston,* 567 A.2d at 923 ("We are not here confronted with the establishment of a general market for [legal malpractice] claims."); *Drabek,* 835 S.W.2d at 710 (appellant did not dispute the general rule that an attorney owed no duty to persons other than the client but contended that the rule did not apply in this case).

The only other authority cited by Wagener is *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988). Here, the Pennsylvania Supreme Court concluded that a claim for damages based upon legal malpractice is more akin to a property right that can be assigned prior to liquidation. *Id.* 539 A.2d at 359. The Pennsylvania court allied itself with jurisdictions that permit assignment of legal malpractice claims and stated:

> We will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice. Where the attorney has caused harm to his or her client, there is no relationship to be protected.

*Id.*

We do not find this reasoning persuasive. Refusing to allow assignment of legal malpractice claims would not shield an attorney from the consequences of legal malpractice. The client would still be able to bring any and all legal malpractice claims against his or her attorney. As the *Picadilly* court noted:

> Our concern with the assignment of legal malpractice cases is not motivated by a desire to give lawyers the freedom to ignore their obligations to non-clients. We view the Rules of Professional Conduct

and the law of legal malpractice as shields to protect both clients and non-clients.

\* \* \* \* \* \*

The question in this case is not whether clients should be able to make claims against lawyers for malpractice. The question is whether to allow clients to sell off their claims for pursuit by others.

*Picadilly,* 582 N.E.2d at 344 n. 9, 345.

In addition, the claim that there is no attorney-client relationship to be protected fails to take into account many aspects of the arguments against assignment. First, the risk that allowing assignment of claims would impair an attorney's loyalty would be present not only in those cases in which a client assigned a malpractice claim, but in all other cases as well. Second, the client who assigned his or her claim, even if that person no longer had a professional relationship with the attorney, would be in no position to control the release of confidential information. Generally, in a malpractice action, the client controls the case and can limit the release of confidential information. In the case of the assignment of a claim, however, the assignee would control the claim and may have little or no concern for the client's sensitivities because the assignee's primary concern would be a monetary recovery. A client may well come to this realization after it is too late to do anything about it. Thus, the client could still be harmed even though the relationship had ended. Third, this argument does not take into account the effects of commercialization of claims on the bar and clients in general.

Amicus curiae Minnesota State Bar Association shares McDonald's concern about the confidential nature of the attorney-client relationship, loyalty, and confidentiality. We have already addressed these concerns. The Bar Association also expressed the concern that allowing assignment of legal malpractice claims may restrict the availability of legal services and result in increased legal malpractice premiums. While we recognize that increased legal malpractice premiums may well be a result of allowing assignment, we do not base our decision on this consideration.

Based on all these concerns, we conclude that the assignment of legal malpractice claims is contrary to Minnesota's public policy and thus answer the certified question in the affirmative.

## DECISION

The assignment of a legal malpractice claim is contrary to Minnesota's public policy.

Certified question answered in the affirmative.