29 F.3d 1283
 RICO Bus.Disp.Guide 8614
 APPLETREE SQUARE I, LIMITED PARTNERSHIP; CRHC of
Bloomington, Inc., its general partner; Crimark
Office Building Associates, its general
partner, Appellants,
v.
W.R. GRACE & CO., individually and as successor in interest
to the Zonolite Company, Western Mineral Products Company,
Inc., Multibestos Company, the Dewey & Almy Chemical
Company, Universal Zonolite Company and the Grace Zonolite
Division and all other predecessor companies, Appellee.
 No. 93-3359.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1994.
Decided July 19, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 8, 1994.
 
 R. Terri Mandell, Minneapolis, MN, argued, for appellant.
 Allen W. Hinderaker, Minneapolis, MN, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Appletree Square I Limited Partnership, CRHC of Bloomington, Inc., and Crimark Office Building Associates Limited Partnership (collectively, "Appletree") filed a ten-count complaint against W.R. Grace & Company ("Grace"), seeking to recover costs of removing asbestos-containing fireproofing material from Appletree's commercial office building. The district court[1] granted summary judgment in favor of Grace, holding that Appletree's nine state law claims were time-barred and that Appletree failed to establish a genuine issue of material fact regarding its standing to bring its claim under the Racketeer Influenced and Corrupt Organizations Act, as amended, 18 U.S.C. Secs. 1961-1968 (1988) ("RICO"). 815 F.Supp. 1266. We affirm.
 
 
 2
 When the office building was constructed in 1972 and 1973, Monokote III, an asbestos-containing fireproofing product manufactured by Grace, was sprayed on the structural steel. The original owner and architect sold the building to Appletree Square I Limited Partnership on September 21, 1981. Appletree discovered the presence of the asbestos-containing fireproofing in 1986.
 
 
 3
 Appletree filed the present action on June 29, 1990, alleging claims based on strict liability, negligence, nuisance, breach of warranties, misrepresentation and fraud, restitution, false advertising and consumer fraud, conspiracy, concert of action, and RICO. Grace was served on July 3, 1990.
 
 I. State law claims
 
 4
 The Minnesota statute of limitations for improvements to real property[2] applies to Appletree's state law claims, with the exception of its breach of warranty claims.[3] Minn.Stat. Sec. 541.051; see Metropolitan Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1261 (8th Cir.1993); Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 328-29 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); Independent School Dist. No. 197 v. W.R. Grace & Co., 752 F.Supp. 286, 289 (D.Ct.Minn.1990); Independent School Dist. No. 622 v. Keene Corp., 495 N.W.2d 244, 248-49 (Minn.Ct.App.1993), aff'd in part and rev'd in part on other grounds, 511 N.W.2d 728 (1994). The statute includes a limitations period of two years from discovery of the injury and a statute of repose which cuts off the right of action ten years from substantial completion of the construction. Minn.Stat.Ann. Sec. 541.051, subd. 1(a) (West.Supp.1994).
 
 
 5
 Appletree argues that its action was timely because Grace fraudulently concealed knowledge of the hazardous nature of asbestos. Although a defendant's fraudulent concealment may toll the ten-year statute of repose, it does not toll the two-year limitation period which, by its terms, does not begin to run until discovery of the injury. See Wittmer v. Ruegemer, 419 N.W.2d 493, 497-98 (Minn.1988). Thus, even assuming that Grace's allegedly fraudulent conduct prevented Appletree from discovering the defective condition of the fireproofing within ten years of substantial completion of the building, Appletree's action is time-barred if it discovered its injury more than two years before bringing suit.
 
 
 6
 The district court concluded that, prior to July 3, 1988, Appletree discovered, or through the exercise of reasonable diligence should have discovered, that the asbestos in the building was a hazard in need of abatement. The court pointed to the following information which Appletree possessed by early March 1988:
 
 
 7
 1. an engineering and environmental testing organization's report which stated that asbestos was present in the building, listed its condition as "poor" because it was highly friable with the potential for future erosion, assumed some of the ceiling tiles had become contaminated with asbestos fibers and fallen debris, and recommended priority removal;
 
 
 8
 2. a law firm's letter discussing the hazards from asbestos exposure, state and federal regulations concerning asbestos levels, and abatement issues. The letter recommended the building be surveyed to determine whether the asbestos was a current health hazard;
 
 
 9
 3. an air sampling report showing that asbestos fibers were present in the air in the building and stating that any contamination of air by asbestos was a potential health risk; and
 
 
 10
 4. an environmental consulting firm's paper indicating that it was a mistake to rely on air sampling alone to detect the presence of asbestos.
 
 
 11
 Further, the district court noted that Appletree placed a "hold" on above-ceiling maintenance work in early 1988 in order to ensure that maintenance personnel and tenants would not disturb the fireproofing.
 
 
 12
 Appletree does not dispute these facts. Instead it argues that the two-year statute of limitations did not begin to run until November 1991, when it received test results showing elevated levels of contamination above the ceiling tiles,[4] relying on MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274 (8th Cir.1994). In MDU, we held that, under North Dakota law, the issue for purposes of the statute of limitations was not when MDU learned of the presence of asbestos in its building, but when MDU could have learned, with the exercise of reasonable diligence, that its building had been contaminated by asbestos. Id. at 1279.
 
 
 13
 Even if we were to apply the MDU standard to the present case, the outcome remains unchanged. As Appletree recognizes in its reply brief, the MDU "contamination" standard is consistent with the "hazard requiring abatement" standard that the district court applied. We conclude that the undisputed facts from which the district court concluded that, prior to July 3, 1988, Appletree discovered, or through the exercise of reasonable diligence should have discovered, that the asbestos in the building was a hazard in need of abatement also lead to the conclusion that Appletree, prior to July 3, 1988, could have learned, with the exercise of reasonable diligence, that its building had been contaminated by asbestos.
 
 
 14
 Further, Minnesota's revival statute for asbestos cases does not aid Appletree. The statute revives or extends an asbestos abatement recovery action "that would otherwise be barred before July 1, 1990, as a result of expiration of the applicable period of limitation." Minn.Stat.Ann. Sec. 541.22(2) (West Supp.1994). It adds that "[a]n asbestos action revived or extended under this subdivision may be begun before July 1, 1990." Id. Appletree filed its complaint in federal district court on June 29, 1990, but Grace was not served until July 3, 1990. Under Minnesota law, an action is commenced or begun when the defendants have been served. Minn.R.Civ.P. 3.01; Metropolitan Federal Bank, 999 F.2d at 1261-62; Concordia College Corp., 999 F.2d at 330-331. Because Appletree's action was not begun before July 1, 1990, the revival statute does not apply.
 
 
 15
 Appletree argues that we should apply Federal Rule of Civil Procedure 3, which states that a "civil action is commenced by filing a complaint with the court," and hold that, by filing its complaint on June 29, 1990, Appletree came within the revival statute. In Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court held that "Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." Id. at 751, 100 S.Ct. at 1985. The Court stated:
 
 
 16
 There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.
 
 
 17
 Id. at 753, 100 S.Ct. at 1986.
 
 
 18
 Appletree attempts to distinguish Walker on the grounds that jurisdiction in that case was based on diversity of citizenship and jurisdiction in the present case is based on a federal law (RICO). We note that Appletree pleaded both diversity and federal question jurisdiction in its complaint and that both bases for jurisdiction exist. In any event, we conclude that the rationale of Walker does not change "solely because of the fortuity" that Appletree pleaded a federal claim along with state claims. "[I]t is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law." Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n. 1 (2nd Cir.1956). The state law claims would be barred in state court; Walker dictates that they should not be allowed to proceed in federal court.
 
 II. RICO claims
 
 19
 Appletree argues that the district court erred in deciding that Appletree lacked standing to bring its civil RICO claims. Under 18 U.S.C. Sec. 1964(c), a plaintiff has standing to bring a civil RICO claim when the plaintiff has been "injured in his business or property by reason of" the racketeering activity. The "by reason of" language requires the plaintiff to demonstrate that the defendant's racketeering activity was the proximate cause of its injury. Holmes v. Securities Investor Protection Corp., --- U.S. ----, ---- - ----, 112 S.Ct. 1311, 1316-18, 117 L.Ed.2d 532 (1992). Appletree's RICO claims are based on predicate acts of mail and wire fraud. In order to establish injury to business or property "by reason of" a predicate act of mail or wire fraud, a plaintiff must establish detrimental reliance on the alleged fraudulent acts. See County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2nd Cir.1990); Reynolds v. East Dyer Development Co., 882 F.2d 1249, 1253 (7th Cir.1989); Brandenburg v. Seidel, 859 F.2d 1179, 1188 n. 10 (4th Cir.1988).
 
 
 20
 Appletree does not contend that Grace or the various groups and associations to which Grace belonged directed any misstatements or misrepresentations about Monokote III specifically toward it or that it relied on any alleged misrepresentations in purchasing the building. Instead, Appletree attempts to establish detrimental reliance through a fraud-on-the-market theory. It contends that if Grace had disclosed to the "marketplace" the hazards associated with Monokote III, Appletree would not have purchased a building containing Monokote III or at least would have negotiated a lower purchase price for the building.
 
 
 21
 Courts have generally limited the use of the fraud-on-the-market theory to securities fraud cases. The theory permits a plaintiff to establish a rebuttable presumption of reliance based upon the premise that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." Basic Inc. v. Levinson, 485 U.S. 224, 246, 108 S.Ct. 978, 991, 99 L.Ed.2d 194 (1988). When a purchaser buys stock at market price, he necessarily relies on any material misrepresentations incorporated into the price. The theory does not apply to Appletree's case because the presumptions underlying the theory are not present. The real estate market, unlike the stock market, is not a well-developed market in which the price of a building reflects all publicly available information. Thus, Appletree cannot employ the fraud-on-the-market theory to establish detrimental reliance. Because Appletree has not produced any evidence to show it detrimentally relied on any of the alleged misrepresentations in its purchase of the building, it has failed to establish the existence of a genuine issue of material fact as to whether the alleged misrepresentations proximately caused its claimed injuries and thus lacks standing to bring its civil RICO claims.
 
 
 22
 The judgment is affirmed.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota
 
 
 [2]
 The statute provides:
 Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury ... nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.
 Minn.Stat.Ann. Sec. 541.051, subd. 1(a) (West Supp.1994).
 
 
 [3]
 We agree with the district court that Appletree's breach of warranty claims accrued upon tender of delivery of the fireproofing material in the early 1970s and are barred by the four-year statute of limitations applicable to these claims at the time Appletree filed its suit. See Minn.Stat.Ann. Sec. 336.2-725 (West 1966)
 
 
 [4]
 We note that Appletree filed its complaint seventeen months before the time it claims it discovered or should have discovered it had a cause of action