**APPLETREE SQUARE I LIMITED PARTNERSHIP AND BUSINESS CONSULTANTS, INC. as Liquidating Agent for Appletree Square I, Limited Partnership, Respondents,**

v.

**O'CONNOR & HANNAN, a general partnership, et al., Appellants.**

**No. C2–96–1360.**

Court of Appeals of Minnesota.

March 4, 1997.

Review Granted April 24, 1997.

Robert D. Brownson, Kristin Ottmar, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, Richard L. Pemberton, Robert J. Sefkow, Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Fergus Falls, Edward J. Laubach, Jr., Hall & Byers, P.A., St. Cloud, for Respondents.

James S. Simonson, Michael C. Flom, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Appellants.

Considered and decided by SCHUMACHER, P.J., TOUSSAINT, C.J., and FORSBERG,* J.

## OPINION

THOMAS G. FORSBERG, Judge.

Respondents Appletree Square I Limited Partnership (Appletree) and Business Consultants, Inc., as Liquidating Agent for Appletree (BCI), brought this legal malpractice action against appellants O'Connor & Hannan and 56 of its former and present attorneys (O'Connor & Hannan). O'Connor & Hannan moved to dismiss the complaint, arguing that because legal malpractice claims are not assignable, the trial court lacked subject matter jurisdiction, BCI had no standing, and the complaint failed to state a claim upon which relief could be granted. The district court denied the motion, and this appeal followed.[1] Because legal malpractice claims are not assignable under Minnesota law, we reverse.

## FACTS

In 1981, Appletree purchased a 15-story office building from the building's original owner and architect. During the building's construction in 1972 and 1973, an asbestos fireproofing material manufactured by W.R. Grace & Company had been sprayed on the steel support beams.

In 1990, Appletree and its general partners retained O'Connor & Hannan to bring a federal action against W.R. Grace. The complaint alleged a RICO violation, as well as several state law claims. The state law

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. By order on July 16, 1996, this court concluded that the challenge by O'Connor & Hannan to BCI's authority to bring this legal malpractice claim was analogous to the subject matter jurisdiction challenge involved in *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830 (Minn.1995). The district court's order is, therefore, appealable as a matter of right.

claims were dismissed as time-barred. *See Appletree Square 1 Ltd. Partnership v. W.R. Grace & Co.*, 815 F.Supp. 1266 (D.Minn. 1993). By separate order, the RICO claim was also dismissed. *Id.*, Civ. No. 3–92–701 (D.Minn. 1993). These two rulings were affirmed by the Eighth Circuit Court of Appeals. *Id.*, 29 F.3d 1283 (8th Cir.1994).

On September 27, 1993, Appletree, again represented by O'Connor & Hannan, filed for federal bankruptcy protection under Title 11. A liquidating plan was proposed by Appletree's creditors and eventually approved by the bankruptcy court. Under the terms of that plan, one of the creditors was given authority to select a disinterested person to be the "Liquidating Agent." Prior to confirmation, the creditor notified the bankruptcy court that it had selected BCI. One business day after confirmation, the plan "vested" BCI, as the liquidating agent, with all of Appletree's "rights, powers and authority" and with the trust assets "which shall be held in trust for the benefit of claimants under this Plan." BCI was given the "exclusive authority to wind up the affairs of [Appletree] consistent with the terms of the Plan." The plan further "retain[ed] and preserve[d] all claims or interests belonging to [Appletree] or the estate" and authorized BCI "to pursue any claims and causes of action belonging to [Appletree] against third parties, including * * * claims of malpractice[.]"

After commencing this legal malpractice action against O'Connor & Hannan, BCI moved to compel production of O'Connor & Hannan's files with respect to the federal action against W.R. Grace, a separate state case, and the Appletree bankruptcy case.[2] The motion was granted, but enforcement of the discovery order was stayed pending this appeal.

## ISSUE

Did the district court err in denying O'Connor & Hannan's motion to dismiss this legal malpractice complaint?

## ANALYSIS

■ The question of a person's standing to bring suit is essential to a court's exercise of jurisdiction. *See Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27 (Minn. 1989). Whether a trial court has subject matter jurisdiction is a question of law which this court reviews de novo. *Cf. Ojala v. St. Louis County*, 522 N.W.2d 342, 343 (Minn. App.1994).

■ The assignment of a legal malpractice claim is contrary to Minnesota public policy. *Wagener v. McDonald*, 509 N.W.2d 188, 193 (Minn.App.1993). Such an assignment would convert these claims into commodities "to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney," thus making the assignment incompatible with the attorney's duty of confidentiality and detrimental to the unique and personal nature of the attorney-client relationship. *Id.* at 191 (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (1976)).

This action vividly demonstrates these dangers. BCI's prosecution of this action threatens O'Connor & Hannan's duty of confidentiality to its former client. Indeed, Appletree's former general partners have objected to the release of any files and have indicated that they do not intend to waive or release any attorney-client privilege. And, by creating a liquidating plan with the express goal of removing control of the claim from Appletree, Appletree's creditors have essentially converted this malpractice claim into an economic asset or commodity.

■ The prohibition against assignment of legal malpractice claims is not altered by the fact that this case involves a bankruptcy debtor and a confirmed plan of liquidation expressly designed to transfer this malpractice claim to BCI. While the bankruptcy code permits the transfer of nonassignable claims into a bankruptcy estate by preemptive language, no similar preemptive language exists to permit the transfer of such

2. O'Connor & Hannan also represented Appletree in a state suit initiated in Hennepin County against the building's original owner and architect, *Appletree v. Investmark, Inc.*, 91–16792, which was consolidated with another case entitled *New York Life Ins. Co. v. Landmark Dev. Corp.*, 91–19600. These cases, along with the federal case against W.R. Grace, were still pending when the creditors' plan was confirmed.

claims out of the estate. *See* 11 U.S.C. § 541(a)(1), (c)(1); *Pappas v. Sommer,* 240 Neb. 609, 483 N.W.2d 146, 148 (1992). Once otherwise nontransferable assets are acquired by a bankruptcy estate, those assets are subject to applicable nonbankruptcy laws. *Cf. In re Schauer,* 835 F.2d 1222, 1225 (8th Cir.1987) (consistent with state law, patronage margin certificates not transferrable or assignable from bankruptcy estate without approval of farm cooperative); *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402–03 (9th Cir.1986) (involving nontransferable liquor licenses). Thus, Minnesota law applies to the transfer or assignment of a legal malpractice claim out of a bankruptcy estate, and it prohibits such an assignment. *Cf. Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 339 (Ind.1991); *Earth Science Labs., Inc. v. Adkins & Wondra, P.C.,* 246 Neb. 798, 523 N.W.2d 254, 257 (1994) (public policy prohibits party purchasing legal malpractice claim from bankruptcy estate from asserting claim); *Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith,* 922 S.W.2d 865, 869 (Tenn. 1996).

■ This result is not changed by the appointment of a representative under 11 U.S.C. § 1123(b)(3)(B) ("any claim or interest belonging to the debtor or to the estate" may be brought in post-confirmation action if reorganization plan provides for "retention and enforcement" of claim by representative of estate "appointed for that purpose"). *See also Harstad v. First Am. Bank,* 39 F.3d 898, 902–04 (8th Cir.1994). BCI cites a number of cases construing section 1123(b)(3)(B) that have allowed a representative to assert even nonassignable claims of a reorganized debtor. *See, e.g., In re Texas Gen. Petroleum Corp.,* 52 F.3d 1330, 1336 (5th Cir.1995) (liquidating trustee has standing to exercise fraudulent conveyance powers of debtor); *In re Sweetwater,* 884 F.2d 1323, 1327 (10th Cir.1989) (properly appointed trustee has standing to bring post-confirmation avoidance action). These cases, however, involve interests created or governed by federal bankruptcy law, not state law. These cases also tend to acknowledge that a "transfer" or "assignment" of claims to the representative has occurred. *See, e.g., Texas Gen. Petroleum,* 52 F.3d at 1335. Thus, while the language of the liquidation plan specifically authorizes

post-confirmation enforcement of the legal malpractice claim by BCI, this constitutes an impermissible and prohibited assignment under Minnesota law.

## DECISION

The district court erred in denying O'Connor & Hannan's motion to dismiss the complaint.

**Reversed.**