**APPLETREE SQUARE I LIMITED PARTNERSHIP and Business Consultants, Inc., as Liquidating Agent for Appletree Square I Limited Partnership, petitioner, Appellant,**

v.

**O'CONNOR & HANNAN, a general partnership et al., Respondents.**

No. C2–96–1360.

Supreme Court of Minnesota.

Feb. 12, 1998.

Rehearing Denied April 7, 1998.

Richard L. Pemberton, Robert J. Sefkow, Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Fergus Falls, Robert D. Brownson, Kristi K. Ottmar, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, Edward J. Laubach, Jr., Hall & Byers, P.A., St. Cloud, for appellant.

James S. Simonson, Michael C. Flom, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondents.

## OPINION

TOMLJANOVICH, Justice.

Appellant Business Consultants Inc. (BCI), as liquidating agent for Appletree Square I Limited Partnership (Appletree), appeals from the court of appeals' decision requiring dismissal of Appletree's legal malpractice suit against respondent law firm O'Connor & Hannan. Appletree filed for chapter 11 bankruptcy in September 1993. In accordance with 11 U.S.C. § 1123(b)(3)(B), Appletree's plan of reorganization (Plan) provided that all of its potential causes of action, including those for legal malpractice, would be retained and the appointed liquidating agent of the bankruptcy estate would have the authority to prosecute those claims. BCI was duly appointed as liquidating agent and thereafter commenced a malpractice action against O'Connor & Hannan.

O'Connor & Hannan moved for dismissal in district court, claiming that the court lacked subject-matter jurisdiction, the complaint failed to state a claim upon which relief could be granted, and BCI lacked standing to bring the claim because the legal malpractice claim had been assigned to BCI, an assignment they argue is contrary to Minnesota's public policy. The district court denied the motion, O'Connor & Hannan appealed, and the court of appeals reversed. This court granted Appletree's petition for review.

We reverse.

### I.

Appletree is a limited partnership that was established in 1981 for the purpose of acquiring and operating One Appletree Square, a 15–story office building located in Bloomington, Minnesota. In 1986, five years after purchasing One Appletree Square, Appletree learned that the building had been constructed using a fireproofing material that contained asbestos. Due to subsequent contamination caused by the asbestos, major renovations were required, and Appletree retained O'Connor & Hannan to represent it in

an asbestos removal property damage action against the manufacturer of the material, W.R. Grace & Co. (Grace).

O'Connor & Hannan filed Appletree's complaint against Grace, which included both state and federal law claims, in federal district court on June 29, 1990. In bringing the asbestos action, O'Connor & Hannan relied on Minn.Stat. § 541.22, subd. 2 (1996), which extends the statute of limitations period to June 30, 1990, in an otherwise time-barred asbestos-related suit. The defendants however, were not served until July 3, 1990. Under Minnesota law, a suit does not "commence" until process has been served. Minn. R. Civ. P. 3.01(a). As a result, the federal district court granted summary judgment in favor of the defendants, finding that the state law claim was barred by the statute of limitations.[1] *Appletree Square 1 Ltd. Partnership v. W.R. Grace & Co.*, 815 F.Supp. 1266, 1271– 72 (D.Minn.1993). The Eighth Circuit Court of Appeals affirmed the dismissal. *Appletree Square I Ltd. Partnership v. W.R. Grace & Co.*, 29 F.3d 1283, 1284 (8th Cir.1994).

O'Connor & Hannan also represented Appletree when it filed a voluntary chapter 11 bankruptcy petition on September 27, 1993. Pursuant to the bankruptcy action, Appletree creditors negotiated and drafted a plan of liquidation, which was confirmed by the bankruptcy court on September 27, 1994. The primary purpose of the Plan was to provide for the settlement of the claims of Appletree's creditors. The Plan detailed the method for liquidating all of Appletree's assets. To effectuate liquidation, the Plan provided that New York Life Insurance Co., an Appletree creditor, had the sole authority to appoint a liquidating agent. New York Life named BCI as liquidating agent.

The Plan vested the liquidating agent with numerous rights and duties. Among them was the authority to pursue any claims, including malpractice claims, of the Debtor and of the bankruptcy estate, that were specifically retained.[2] All amounts recovered

---

1. By separate order, the court also dismissed the federal claim as a matter of law.

2. The Plan did not vest the liquidating agent with authority to prosecute the "Shared Litigation

Claims." The Shared Litigation Claims did not include the malpractice claim at issue here and are not otherwise relevant to this case.

through prosecution of any causes of action were required to be distributed to Appletree's creditors in accordance with the procedure specified in the Plan.

In October 1995, BCI, in its representative capacity, initiated this malpractice action against O'Connor & Hannan and 56 of its attorneys, alleging that they committed legal malpractice when they represented Appletree in the lawsuit against Grace. O'Connor & Hannan brought a motion to dismiss, contending that Appletree's legal malpractice claim was assigned to BCI and further asserting that the assignment was invalid under Minnesota law. The district court denied the motion, finding that retention of the claim in accordance with the Plan was not an assignment and that BCI had standing to prosecute the claim as a representative of the estate. The Minnesota Court of Appeals reversed, concluding that BCI acquired rights to the malpractice claim through an impermissible assignment. *See Appletree Square I v. O'Connor & Hannan*, 559 N.W.2d 711, 714 (Minn.App. 1997). BCI appeals to this court, arguing that the court of appeals incorrectly determined there had been an assignment.

## II.

Chapter 11 is the primary business reorganization chapter in the United States Bankruptcy Code (Code). When a debtor files a chapter 11 petition pursuant to section 301 of the Code, a bankruptcy estate is created and all legal or equitable interests in the property of the debtor, with a few exceptions not relevant to this case, become part of this estate notwithstanding any provision in an agreement, transfer instrument, or nonbankruptcy law to the contrary. 11 U.S.C. § 541(a)(1), (c)(1) (1994).[3] Generally, once a petition is filed there is an automatic stay of all attempts by creditors to collect claims or enforce liens that arose prior to the petition. 11 U.S.C. § 362(a) (1988) (amended 1994). The Code specifically provides that "as soon as practicable" after the chapter 11 order for relief, the United States trustee shall appoint a committee of creditors holding unsecured

claims. 11 U.S.C. § 1102(a)(1) (1988) (amended 1994).

The Code grants this committee broad duties and powers, including participation in the formulation of a plan. 11 U.S.C. § 1103(c)(3) (1994). In the plan of reorganization, the drafters may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any * * * claim or interest" belonging to the estate or the debtor. 11 U.S.C. § 1123(b)(3)(B). In summary, the Code expressly permits a committee of creditors to formulate and file a plan of reorganization with the bankruptcy court, and that plan may explicitly retain a claim belonging to the bankruptcy estate for the purpose of empowering the representative of the estate to pursue that claim. This is precisely what occurred in this case.

At the time Appletree filed for chapter 11 bankruptcy in September 1993, its potential legal malpractice claim against O'Connor & Hannan already existed. Consequently, by virtue of 11 U.S.C. § 541, that claim became part of the bankruptcy estate when Appletree filed its petition. Subsequently, a plan of reorganization was formulated and confirmed by the bankruptcy court. In accordance with section 1123(b)(3)(B), the Plan unambiguously provided that all claims of the estate would be preserved and that a liquidating agent would have the authority to prosecute those claims. Article 4E of the Plan states, in part:

> This Plan retains and preserves all claims or interests belonging to Debtor or the estate including, but not limited to, any claim or cause of action of the Debtor that any general or limited partner of the Debtor could bring through or on behalf of Debtor * * *. [T]he Liquidating Agent shall be authorized to pursue any claims and causes of action belonging to the Debtor against third parties, including, but not limited to, those claims of malpractice or mismanagement, * * * and such claims and causes of action are retained for prose-

---

**3.** *See also Sundae v. Scot*, 529 N.W.2d 362, 364–65 (Minn.App.) (holding that defamation and abuse of process claims of debtor become estate property upon filing for bankruptcy, regardless of whether claims are assignable under state law), *pet. for rev. denied*, (Minn. March 31, 1995).

cution by the Liquidating Agent as representative of the estate for the benefit of persons entitled to payment pursuant to this Plan. * * * All recoveries by the Liquidating Agent with respect to such claims or causes of action, net of Expenses[,] shall be used to fund Distributions in accordance with the Plan.

Indeed, it is difficult to imagine how the Plan could have complied with section 1123(b)(3)(B) any more explicitly.

Nevertheless, O'Connor & Hannan contends that granting authority to BCI to bring the cause of action constituted an assignment of a legal malpractice claim which, it asserts, is prohibited by state law. O'Connor & Hannan relies on the Minnesota Court of Appeals' decision in *Wagener v. McDonald* to support its position. 509 N.W.2d 188 (Minn. App.1993).

In *Wagener*, an attorney represented a couple in a land registration action regarding property the couple owned. *Id.* at 189. The district court's order and decree of registration reflected a highway easement for the State of Minnesota, which limited advertising devices on the property. *Id.* The couple later sold the property and the buyer subsequently sued the couple, Wagener, and three other parties, claiming that the property was not "marketable" as defined in the contract for deed. *Id.* The district court entered judgment against the couple for $650,000. *Id.* One year later, the couple assigned to Wagener all their rights in any claims against the attorney in settlement of all claims that Wagener had against the couple. *Id.* Wagener brought a malpractice action against the attorney, claiming he was negligent for failing to make the title "marketable." *Id.* After an unsuccessful motion for summary judgment, the attorney moved to certify the question of whether the assignment of a legal malpractice claim contravenes public policy. *Id.* The court of appeals held that it did. *Id.* at 193.

In our view, however, *Wagener* is not applicable to this case because there has not been an assignment. Unlike the case at bar, the claim in *Wagener* unquestionably was transferred to an independent third party who was personally entitled to any resulting judgment. *See id.* at 189. Here, BCI is attempting to assert the claim on behalf of Appletree. The method by which BCI acquired authority over the malpractice claim was more akin to transfer by the operation of law, rather than by an outright assignment. *Cf. Johnson v. Taylor*, 435 N.W.2d 127, 129 (Minn.App.) (holding that a legal malpractice claim survived the death of the decedent), *pet. for rev. denied*, (Minn. Apr. 19, 1989). Acquisitions of this nature, where the entity bringing the action merely is representing the original holder, do not come within the traditional definition of an assignment. The Tenth Circuit Court of Appeals addressed this distinction in *In re Sweetwater*, 884 F.2d 1323 (10th Cir.1989).

In *Sweetwater*, Sweetwater's plan of reorganization provided that certain creditors, instead of receiving cash, would have an interest in a fund of cash and assets. *Id.* at 1324–25. The fund's assets included the potential proceeds from litigation with Citicorp. *Id.* at 1325. Robison was named trustee of the fund and in that capacity he brought an avoidance action against Citicorp. *Id.*[4] Citicorp moved for dismissal, claiming that the grant of authority to Robison to bring the avoidance action was invalid because avoidance powers may not be assigned. *Id.* However, Robison asserted that his appointment to enforce the claims was permitted under section 1123(b)(3)(B). *Id.* at 1326. The court ultimately concluded that the plan satisfied the requirements of section 1123(b)(3)(B), and there was no assignment. *Id.* at 1327. The *Sweetwater* court reasoned that

in effect the avoidance claims were not assigned outright to Robison within the meaning of the term 'assign' as it traditionally has been used in the case law involving the nonassignability rule. Rather, Sweetwater has in effect retained the avoidance

---

4. Robison sought to: (1) avoid Citicorp's unperfected security interest in Sweetwater's rights to future payments under some time share installment contracts; (2) recover payments Citicorp had received under those installment contracts; and (3) request the amount of a mutual debt that Citicorp had improperly offset against Sweetwater's debts to it. *Sweetwater*, 884 F.2d at 1325.

claims, [and] Robison has been given the responsibility of enforcing them * * * . If § 1123(b)(3)(B) is to function in such a situation, a reorganization plan must empower a representative of the estate to enforce claims of the estate.

*Id.*

We find *Sweetwater's* sound analysis directly applicable to this case. Like the plaintiff in *Sweetwater*, BCI brought the malpractice claim in its representative capacity pursuant to section 1123(b)(3)(B) of the Code. Furthermore, as in *Sweetwater*, BCI was not entitled to any recovery from the prosecution of the claim. *See Sweetwater*, 884 F.2d at 1327. Rather, the Plan directs that BCI distribute any proceeds to Appletree's creditors as set out in the Plan. BCI can only receive reimbursement for incurred expenses and a reasonable hourly fee for its services, and that fee must be approved by the bankruptcy court. *See id.* (emphasizing that in determining whether the plaintiff is a representative of the estate, " '[t]he primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors' ").

We conclude that merely investing a representative with responsibility to pursue a claim belonging to the bankruptcy estate does not by itself constitute an assignment. While we recognize that there may be serious public policy considerations regarding the assignment of legal malpractice claims, we need not address that issue, given our conclusion that there has not been an assignment in this case.

### III.

We hold that because Appletree's confirmed Plan authorized BCI to prosecute the legal malpractice claim on the estate's behalf in accordance with 11 U.S.C § 1123(b)(3)(B), and BCI has no independent claim to any proceeds from a successful prosecution, there has been no assignment. Therefore, we reverse the court of appeals' decision requiring dismissal of the complaint, and remand to the district court for further proceedings consistent with this opinion.

Reversed.

BLATZ, C.J. and GILBERT, J., took no part in the consideration or decision of this case.