**PROFESSIONAL FIDUCIARY, INC., et al., Respondents,**

v.

**Steven A. SILVERMAN, et al., Appellants.**

**No. A05–1322.**

Court of Appeals of Minnesota.

May 2, 2006.

Patrick H. O'Neill, Jr., Stephen M. Warner, O'Neill & Murphy, LLP, St. Paul, MN, for respondents.

Lewis A. Remele, Jr., Kevin P. Hickey, Robin Ann Williams, Bassford Remele, Minneapolis, MN, for appellants.

Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and CRIPPEN, Judge.*

## OPINION

MINGE, Judge.

Appellants Steven Silverman and Progressive Casualty Insurance present a certified question whether respondent Professional Fiduciary, personal representative for the estate of Kory Erickson, is precluded from bringing a malpractice claim against attorney Silverman because (1) the personal representative is conflicted by its association with Western National Insurance, a party adverse to the decedent in the lawsuit out of which the malpractice claim arose; (2) the malpractice suit is a de facto, impermissible assignment of the decedent's claim against Silverman; or (3) the malpractice suit is an impermissible contribution claim against Silverman. Because we conclude that there is no evidence that respondent is conflicted, or that the action is an assignment or contribution claim, we answer the certified question in the positive.

## FACTS

This matter started with a three-vehicle accident. The car driven by decedent Kory Erickson accidentally crashed into a car operated by Sara Jean Meuhlhauser, causing Meuhlhauser's vehicle to collide with a truck owned by Hartmann Well Drilling and Service, driven by Brian Hartmann (jointly Hartmanns), and insured by Western National Insurance. On impact, pipes fell from the Hartmann truck, killing Meuhlhauser's daughter, Salina, a passenger in the Meuhlhauser vehicle. Salina Muehlhauser's next of kin commenced a wrongful death action against Erickson, his wife (as the owner of the car), and Hartmanns. The decedent and his wife were represented by Silverman, an attorney employed by their insurance company, appellant Progressive.

As co-defendants, Hartmanns and Ericksons were adverse to each other. Kory Erickson's wife was ultimately dismissed as a defendant and Erickson had only $30,000 in insurance coverage. Appellants allege that decedent Erickson and the Muehlhauser family wanted more liability to fall on Hartmanns because Hartmanns had substantial insurance coverage and because other than his limited insurance coverage, Erickson lacked resources to satisfy a judgment. Hartmanns brought an unsuccessful motion for directed verdict on the ground that Erickson's negligence was the sole cause of the accident.

During closing arguments, the attorney for the Hartmann defendants argued first and suggested a jury award of $75,000. Silverman argued next. Because he felt that the jury was offended by the suggestion of a low award, Silverman observed that an award could be as high as $1,000,000, but refused to name a number saying that the jury must ultimately determine the appropriate amount. The jury returned a verdict of $495,000 apportioning 50% of the fault to Erickson and 50% to Hartmanns. Because the defendants were jointly and severally liable for the entire award and because Erickson had no personal assets, Western National paid everything except Erickson's $30,000 policy limit which was paid by Progressive. Western National's attorney blamed the large award on Silverman's million dollar comment regarding damages during closing argument.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Subsequent to the trial, Erickson died. Western National brought a contribution claim and obtained a judgment against the decedent in the amount of $217,500 for his share of the jury award that it had paid. Although the family did not initiate a probate proceeding, as a judgment creditor, Western National sought the appointment of a personal representative for the estate. Western National believed that the estate had a malpractice claim against Silverman. The decedent's widow was notified of the proceeding and of Western National's hope that the personal representative would bring a malpractice claim. She did not object. At Western National's suggestion, respondent Professional Fiduciary was appointed personal representative for Erickson's estate.

Professional Fiduciary retained probate counsel. Counsel submitted the facts surrounding Silverman's representation of Erickson in the Muehlhauser wrongful-death action to an expert for review and the expert concluded that Silverman departed from the standard of care owed to decedent Erickson. Professional Fiduciary, in its capacity as personal representative, then filed a malpractice suit against Silverman and, because he was a staff attorney for Progressive, against appellant Progressive.

Appellants moved for summary judgment, arguing that Professional Fiduciary could not maintain the action. Although the district court denied appellants' motion, it agreed to certify the question raised in appellants' summary judgment motion for immediate appeal under Minn. R. Civ.App. P. 103.03(i). The question certified is:

Can an adverse party in an underlying lawsuit use its status as a creditor under Minnesota probate law to obtain the right to bring a legal malpractice claim against the opposing attorney in the name of the estate of the attorney's client?

## ANALYSIS

### I.

■ Minn. R. Civ.App. P. 103.03(i) provides that an appeal may be taken to this court from an order that denies a motion for summary judgment if the district court "certifies that the question presented is important and doubtful." In deciding a certified question arising from denial of summary judgment, "we review the record to determine whether a genuine issue of material fact exists and whether the law was correctly applied." *Murphy v. Allina Health Sys.*, 668 N.W.2d 17, 20 (Minn.App. 2003), *review denied* (Minn. Nov. 18, 2003). Absent genuine issues of material fact, appellate courts review certified questions de novo. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn. 1998).

Although the district court in this case properly certified the question as "important and doubtful" under Minn. R. Civ. App. P. 103.03(i), this court evaluates whether the issue set forth in the certified question accurately reflects the record. *See, e.g., Murphy*, 668 N.W.2d at 19 (rephrasing certified question). The question submitted is as follows:

Can an adverse party in an underlying lawsuit use its status as a creditor under Minnesota probate law to obtain the right to bring a legal malpractice claim against the opposing attorney in the name of the estate of the attorney's client?

As framed, the certified question implies that Western National is bringing the malpractice claim against Silverman. There is no evidence in the record that Professional Fiduciary, as the personal representative, is simply an agent of Western National.

We conclude that it is not helpful to the disposition of the litigation to answer the question as certified. Instead, we rephrase the certified question by noting that the creditor used its status to appoint a personal representative who then pursued a malpractice claim against the decedent's former attorney. The reformulated question reads as follows:

Can the personal representative of an estate maintain a malpractice claim against the decedent's former attorney even though (1) a judgment creditor of the decedent initiated the probate proceeding and the personal representative's appointment and urged the malpractice claim, (2) that creditor's judgment was based on its contribution claim against the decedent as co-defendant, and (3) the alleged malpractice occurred in the action that gave rise to the contribution claim?

We turn to the merits.

## II.

Appellants argue that the respondent personal representative may not bring a malpractice claim against attorney Silverman because (1) the personal representative is conflicted by its association with Western National, a party adverse to the decedent in the underlying lawsuit; (2) the malpractice suit is a de facto, impermissible assignment to Western National of the decedent's claim against Silverman; or (3) the malpractice suit is an impermissible contribution claim against Silverman.

■ Under Minnesota law, personal representatives may bring suit on behalf of the estate. Minn.Stat. § 524.3–703(c) (2004) ("Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent … has the same standing to sue and be sued in the courts of this state … as the decedent had immediately prior to death.");

see also Minn.Stat. § 524.3–715(22) (2004) (authorizing a personal representative to prosecute or defend claims, or proceedings for the protection of the estate and of the personal representative in the performance of duties). This power extends to maintaining a malpractice action against the decedent's lawyer. *Johnson v. Taylor*, 435 N.W.2d 127, 129 (Minn.App.1989), *review denied* (Minn. Apr. 19, 1989).

### 1. Personal Representative Conflict

■ Appellants argue that the personal representative in this matter is barred from pursuing this claim because of a conflict of interest. The record before us does not establish that Western National is a party to the malpractice action, or that Professional Fiduciary, as the personal representative, is beholden to Western National. Professional Fiduciary has a fiduciary duty to the estate to evaluate and pursue claims that would benefit the estate. *See* Minn.Stat. §§ 524.3–703(c), 524.3–715(22). There is no evidence before us to indicate that respondent is not independent or has breached its fiduciary duties to the estate. And even if the personal representative is successful in recovering from the appellant, before Western National can be paid on its claim, the decedent's wife is entitled to her statutory elective share and the expenses of the decedent's funeral and other associated costs and administrative costs must be paid. *See* Minn.Stat. §§ 524.2–402—404, 524.3–715(18), 524.3–719 (2004). If at trial, the finder of fact determines that Professional Fiduciary is not independent but is beholden to Western National, or that net proceeds from any recovery against Silverman go to Western National, defenses discussed in the next sections of this opinion may be applicable. Absent such a finding, appellants are not entitled to summary judgment.

### 2. Malpractice Claim Impermissibly Assigned

The next aspect of the certified question is whether the maintenance of this action per se constitutes an impermissible assignment of a malpractice claim. In Minnesota, legal-malpractice claims are not assignable to non-client third parties. *Wagener v. McDonald,* 509 N.W.2d 188, 193 (Minn.App.1993). Appellants concede that no assignment occurred here. But they argue that a de facto assignment occurred when Western National's nominee was appointed as the personal representative of the decedent's estate.

While no precedent on this point exists in probate law, our supreme court has determined that maintenance of a legal-malpractice claim by the bankruptcy estate is akin to transfer by operation of law rather than transfer by assignment and is permissible. *Appletree Square I, Ltd. P'ship v. O'Connor & Hannan,* 575 N.W.2d 102, 105 (Minn.1998). In reaching its conclusion, the *Appletree* court referred to *Johnson* in the probate law context as an example of a transfer by the operation of law, rather than by an outright assignment. *Id.* It stated that "[a]cquisitions of this nature, where the entity bringing the action merely is representing the original holder, do not come within the traditional definition of an assignment." *Id.*

The *Appletree* court noted that a liquidating agent, appointed under the plan for reorganization, brought the malpractice claim "in its representative capacity pursuant to section 1123(b)(3)(B) of the [Bankruptcy] Code." *Id.* at 106. Furthermore, the liquidating agent was not entitled to any recovery from the prosecution of the claim, but was required to distribute all proceeds to the creditors as set out in the debtor's reorganization plan. *Id.* The court concluded:

[M]erely investing a representative with responsibility to pursue a claim belonging to the bankruptcy estate does not by itself constitute an assignment [, and] [w]hile we recognize that there may be serious public policy considerations regarding the assignment of legal malpractice claims, we need not address that issue, given our conclusion that there has not been an assignment in this case.

*Id.*

Appellants argue that *Appletree* is not on point because in that case, the creditor who appointed the liquidating agent was not party adverse to the debtor in the underlying lawsuit from which the legal-malpractice claim arose. Although this argument may have merit, appellants concede that no assignment occurred here. And *Appletree* makes the point that a liquidating agent, or other entity acting in a representative capacity, does not personally benefit from pursuing a legal-malpractice claim; rather the claim is prosecuted for the benefit of the estate. *Id.*

Appellants also rely on a recent federal bankruptcy case to assert that liquidating agents cannot prosecute legal-malpractice claims where the benefit will only inure to the creditors and not to the estate. *See Moratzka v. Senior Cottages of America,* No. Civ. 05–809, 2005 WL 2000185 (D.Minn. Aug. 18, 2005). *Moratzka* is not helpful. The federal district court held the bankruptcy trustee lacked standing to bring a claim that, under Minnesota law, ran directly to the creditor rather than to the estate because the claim is not an asset of the estate. *Id.* at *3. Furthermore, the bankruptcy trustee's complaint alleged damages to creditors but not damage to the estate. *Id.*

Here, respondent Professional Fiduciary has alleged damage to Erickson and his estate on the ground that Silverman's al-

leged malpractice increased the size of the judgment against Erickson and his estate.[1] Unlike *Moratzka* this is not a case where the claim is so identified with one creditor of the decedent that that creditor is entitled to the proceeds. As previously stated, the expenses of Erickson's probate and his widow's elective share have priority over any creditor claim and any value of the claim against Silverman may be less than such expenses and share.

To obtain summary judgment, Silverman would have to establish that Western National, rather than the estate, is the real party in interest. Based on the record on appeal and the certified question, the district court could not and did not conclude that Professional Fiduciary was not independent or failed to respect its fiduciary duty to the estate in bringing its malpractice action against Silverman. Thus, we cannot conclude that an assignment to Western National has occurred.

### 3. Malpractice Suit as Contribution Claim against Decedent's Former Attorney

 The third aspect of this certified question is whether the maintenance of this malpractice claim is tantamount to an impermissible contribution claim against attorney Silverman. Minnesota law prohibits a party from bringing a contribution claim against an opposing lawyer. *Melrose Floor Co. v. Lechner*, 435 N.W.2d 90, 91–92 (Minn.App.1989); *Eustis v. David Agency, Inc.*, 417 N.W.2d 295, 299 (Minn. App.1987). This prohibition is "based on the public policy that permits a lawyer to make decisions for a client without concern for personal liability in contribution claims to persons the client sues." *Lechner*, 435 N.W.2d at 91.

Western National asserted a contribution claim against the decedent and his estate before the malpractice claim commenced. That judgment is the basis for Western National's status as a creditor and interested person in the decedent's estate. In this sense, Western National/Hartmanns might ultimately benefit from the claim against Silverman. However, as we have previously stated, Professional Fiduciary is filing a malpractice claim against Silverman on behalf of the decedent's estate. Although Erickson's financial circumstances apparently made it impossible for him to pay his uninsured liability to the Muehlhausers, the record does not disclose, and the certified question does not present the issue of, whether it was immaterial to Erickson whether the uninsured liability was modest or enormous. Perhaps he was vulnerable to wage garnishment or other creditor remedies, or, perhaps, he was in financial ruin regardless. On this record, we cannot assume Erickson had no interest in minimizing his liability or that an apparent judgment proof defendant has no interest in a vigorous defense.

Also, we note that the estate is a separate entity. As a fiduciary, Professional Fiduciary has a duty to evaluate the merits of the claim on behalf of the estate and not to maintain a grudge action. This shields Silverman from the possibility of a vendetta. The priorities within the estate, to say nothing of the problems of proving actual malpractice against Silverman, make it far from certain that any part of Western National's contribution claim will be satisfied in this action. Thus, on the record before us and at this stage of the litigation, it is improper to preclude the

---

1. The parties have neither briefed nor argued and we do not consider the merits of respondent's malpractice claim against appellants.

personal representative from bringing a malpractice claim against Silverman. Therefore, we answer the reformulated certified question in the affirmative.

## DECISION

Certified question answered in the affirmative.