**Mary Pat PECK, Jeannie O'Halloran, Thomas Lynch, Grace Glaser Lynch, and James Lockhart, Plaintiffs,**

v.

**UPSHUR COUNTY BOARD OF EDUCATION and Dr. Richard G. Hoover, Defendants.**

**Civil Action No. 2:95–CV–21.**

United States District Court, N.D. West Virginia.

Oct. 24, 1996.

Allan N. Karlin, Morgantown, WV, Robert M. Bastress, Morgantown, WV, for Plaintiffs.

Michael D. Lorensen, Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, Dean L. Whitford, David R. Melton, Charlottesville, VA, for Defendants Upshur County Board of Education and Lynn E. Westfall.

## ORDER

KEELEY, District Judge.

.Pursuant to Fed.R.Civ.P. 62(c), the plaintiffs have moved to restore the preliminary injunction vacated by the Court in its Memorandum Opinion and Order entered on September 30, 1996. On October 10, 1996, after full briefing of the motion and oral argument on the issues raised, the Court GRANTED–IN–PART and DENIED–IN–PART the motion for the following reasons.

## I. PROCEDURAL BACKGROUND

As discussed in greater detail in the Court's earlier opinion, *Peck v. Board of Education, et al.*, 941 F.Supp. 1465 (N.D.W.Va.1996), this case arises out of the decision of the defendant Upshur County Board of Education ("the Board"), to reinterpret its policy prohibiting the distribution of "religious materials" within the schools, and to allow a group of private citizens to make Bibles "available" to students by placing them on tables within the schools.

Before the new policy became effective, the plaintiffs sought to enjoin the Board from granting the citizens access to the schools. After an evidentiary hearing held on February 24, 1995, the Court granted the plaintiffs a preliminary injunction in a Memorandum Opinion and Order entered on February 27, 1995. That decision concluded that the case presented a substantial question of possible violation of the Establishment Clause of the First Amendment and its proscription against governmental endorsement of religion, and further, that the harm to the plaintiffs in denying the injunction greatly outweighed any harm to the defendants in its issuance. Enjoining the defendants' policy preliminarily also afforded the Court time to consider the merits of the plaintiffs' lawsuit and, specifically, whether a permanent injunction should issue.

Thereafter, in a Memorandum Opinion and Order entered on September 30, 1996, the Court denied the plaintiffs' request for a permanent injunction and vacated the preliminary injunction. In doing so, the Court considered fully the constitutional claims of the plaintiffs and held that, in the limited forum opened by the Board, the proposed dissemination of Bibles by private citizens to students constituted religious speech protected by the Free Speech Clause of the First Amendment and did not violate the Establishment Clause.

On October 4, 1996, the plaintiffs moved to restore the preliminary injunction and thereby preserve the *status quo* pending appeal of the Court's Order, and the Board advised the Court that it had granted permission to the group of private citizens who had purchased the Bibles to disseminate them on October 11, 1996.

## II. *LEGAL ANALYSIS*

Federal Rule of Civil Procedure 62(c) states:

(c) *Injunction Pending Appeal.*

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the Court in its discretion may suspend, modify, *restore,* or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed.R.Civ.P. 62(c) (1996) (emphasis added).

■ The paradigm under which the Court must consider the plaintiffs' present motion is set out in *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970):

Briefly stated, a party seeking a [restoration] must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the [restoration] is denied, (3) that other parties will not be harmed by the [restoration], and (4) that the public interest will be served by granting the [restoration].

■ Regarding the first factor in *Long,* the likelihood of success on appeal, the plaintiffs bear a significantly heavier burden now than they assumed at the preliminary injunction stage where the standard in *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir.1977), required that they show only a reasonable probability of success on the merits. This heavier burden is, of course, due to the fact that the Court has issued a decision on the merits which denies plaintiffs their requested relief.

■ Although their burden is heavy, it is not insurmountable. To find that plaintiffs have a strong likelihood of success on appeal, the Court need not harbor serious doubts concerning the correctness of its decision. Otherwise, relief under rule 62(c) would rarely be granted.

What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the *status quo* should be maintained.

*Goldstein v. Miller,* 488 F.Supp. 156, 172–173 (D.Md.1980) (quoting *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843–45 (D.C.Cir. 1977)). Accordingly,

a court, when confronted with a case in which the other three factors strongly favor interim relief, may exercise its discretion to grant a stay if the movant has made a substantial case on the merits.

*Id.*

■ It is beyond peradventure that the questions presented in this case raise difficult and serious questions in an area of the law that tends to be quite fact specific in its application. Nor can it be seriously disputed that the plaintiffs have put forth substantial, colorable arguments on the merits. This factor must therefore be taken to weigh in favor of restoration should the remaining factors so dictate.

■ The fourth factor in *Long* favors neither side inasmuch as the public interest in this case clearly lies in the correct application of the relation between the First Amendment's substantive protection of religious speech and its prohibition of government establishment of religion. *See Congregation Lubavitch v. City of Cincinnati,* 923 F.2d

458, 460 (6th Cir.1991); and *Americans United for Separation of Church and State v. City of Grand Rapids,* 922 F.2d 303, 306 (6th Cir.1990).

Accordingly, whether to restore the preliminary injunction pending appeal hinges on the Court's evaluation of the second and third factors from *Long,* both of which seek to balance the prospective harms to each of the parties in the wake of restoration, and thereby to gauge the general equities of the case.

■ The plaintiffs contend they will suffer grave injury should the dissemination of Bibles be allowed to proceed pending appeal for, at least in constitutional terms, dissemination may moot their claim, harming them immediately and irreversibly.

On the other hand, complete or "blanket" restoration of the preliminary injunction similarly would harm the defendants. Having already determined that the dissemination of Bibles within the Upshur County schools constitutes protected speech that does not violate the Establishment Clause, this Court's subsequent prohibition of the activity would appear to constitute a content-based prior restraint. In *Alexander v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), the Supreme Court stated:

> The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.' M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4–14 (1984) (emphasis added). Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints. [citation omitted].

*Id.* at 550, 113 S.Ct. at 2771.

Such restraints on otherwise protected expression are heavily disfavored, both for their immediate effect in barring the protected speech at issue as well as for their "chilling effect" on prospective protected speech. *See Alexander, supra* at 572, 113 S.Ct. at 2782–83 (Kennedy J., dissenting); *Vance v. Universal Amusement Co.,* 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980)

(per curiam); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971); and *Bantam Books Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

While such a sweeping restriction might be acceptable were it necessary to maintain good order within the schools, the plaintiffs have not demonstrated that the dissemination of Bibles would materially and substantially interfere with operations of the Upshur County schools or the substantive rights of their students to an education. *See Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 508—509, 89 S.Ct. 733, 737–738, 21 L.Ed.2d 731 (1969). Instead, plaintiffs' argument for restoration of the injunction pending appeal relies solely on the content of the speech, and its potential to deprive students, particularly younger students attending Upshur County's elementary and middle schools, of their first amendment protection against government establishment of religion. They are concerned that younger students may misapprehend the neutral role of the schools in the planned Bible dissemination.

Protection of this interest, however, does not demand the complete prohibition of all religious speech within the Upshur County schools. The Court cannot enjoin such non-threatening speech on the basis of its content alone where that content is protected by the First Amendment. To do so would be to deny the private citizens sponsoring the dissemination the same rights granted others, and thereby, equal protection under the Constitution.

■ Furthermore, blanket restoration of the injunction would compound the harm to defendants in that it would, by default, reinstate the Board's prior prohibition on distribution of "religious materials" within the Upshur County schools. That this ban on all religious speech within the schools is unconstitutional is beyond debate in light of recent Supreme Court decisions forbidding categorical exclusion of the religious viewpoint from limited fora established within state sponsored educational systems. *See Rosenberger v. Rector & Visitors of the University of Virginia,* —— U.S. ——, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *See Lamb's Chapel v. Center Moriches Union Free School District,*

508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993).[1]

Restoring the *status quo*, in the present case, therefore, would compel the Board to engage in a continuing violation of the constitutional rights of those who would represent the religious viewpoint within the limited forum which the Court has found exists within the schools. Clearly then, restoration of the preliminary injunction poses a threat of irreparable injury equal to, if not greater than, that which the plaintiffs would face in its absence.

■ Notwithstanding the fact that restoration of the preliminary injunction's blanket prohibition on all religious speech within the schools is too restrictive, in this Court's opinion the possibility that plaintiffs may succeed in overturning its decision on appeal warrants an accommodation to mitigate the possibility of any prospective harm to their interests. To minimize any chance that the planned dissemination of Bibles by a private group within the Upshur County schools will inadvertently convey the perception of impermissible government endorsement of religion, the Court ORDERS the Board to place on the tables holding the Bibles signs, sufficiently large enough to be easily read by all, that disavow unequivocally any Board sponsorship or approval of the Bible dissemination project. These disclaimers may contain language similar to the following:

> These materials are neither sponsored nor endorsed by the Upshur County Board of Education, its agents or employees. The views and information contained in the materials do not reflect the approval nor disapproval of this Board or the school administration.

It is so ORDERED.

The Clerk is directed to transmit copies of this Order to counsel of record.

1. Indeed, plaintiffs recognize that blanket restoration of the former policy is not necessary to prevent the harm they fear. In point of fact, they concede that, pursuant to the Religious Freedoms Restoration Act, 42 U.S.C.A. §§ 2000bb1 to 4 (1994), as well as the Supreme Court's holding in *Board of Education of Westside Community Schools v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), high school students could distribute the Bibles without running afoul of the First Amendment.