584 S.E.2d 473

DELAWARE CWC LIQUIDATION CORP., Formerly Known as Cleveland Wrecking Company, Inc., a Delaware Corporation, Soverign Construction, Inc., a California Corporation, Investment Recovery Services, Inc., a California Corporation, Cleveland Environmental Services, Inc., a California Corporation, Dames and Moore Group, a Delaware Corporation, Cleveland Wrecking Company, Formerly Known as CWC Acquisition Corp., a California Corporation, Who Sue by Their Duly Authorized Assignees, Carlton E. Thornton and Michael R. Jordan, Plaintiffs

v.

**Robert P. MARTIN, Defendant**

**and**

Daniel J. Garletts, and Laurian Kay Garletts, His Wife, Individually and as Mother and Next Friends of Rachel Christine Garletts, Zachary Donald Garletts and Matthew David Garletts, and Sarah Marie Garletts, Individually, Plaintiffs

v.

**Robert D. Aitcheson, Esq., Defendant.**

No. 30985, 31113.

Supreme Court of Appeals of West Virginia.

Submitted March 25, 2003.

Decided May 22, 2003.

Harvey D. Peyton, Esq., The Peyton Law Firm, Nitro, West Virginia, Attorney for Plaintiffs.

Gregory H. Schillace, Esq., Schillace Law Office, Clarksburg, West Virginia, Attorney for Defendant.

Thomas C. Schultz, Esq., Wheeling, West Virginia, Attorney for Plaintiffs.

McGRAW, Justice:

These consolidated cases are before this Court upon certified questions from the Circuit Courts of Putnam and Berkeley Counties, which address the common issue of whether the assignment of a legal malpractice claim is valid and enforceable under West Virginia law, or contrary to public policy and therefore, void. The certified questions, as well as the circuit courts' respective answers to them, are as follows:

1. Is the assignment of a legal malpractice claim contrary to the public policy of the State of West Virginia and therefore void as a matter of law?

Answer of the Circuit Court of Putnam County: No.

2. Should courts determine the validity of the assignment of a legal malpractice claim on a case-by-case basis?

Answer of the Circuit Court of Berkeley County: Yes

3. If an attorney's client who is sued for malicious prosecution settles with the plaintiff under the terms in which the client receives a full release from the malicious prosecution claim in exchange for an assignment to the plaintiff of legal malpractice claims against the client's attorney

who filed the prior suit, is the assignment void as against public policy of the State of West Virginia?

Answer of the Circuit Court of Berkeley County: No.

For the reasons explained herein, this Court concludes that, as a matter of public policy, legal malpractice claims are not assignable in West Virginia and that any such assignment is void as a matter of law.

## I.

### FACTS

The underlying facts which precipitated the assignments of the respective legal malpractice claims are vastly different and are outlined below.

### Delaware CWC Liquidation Corp. v. Martin

In July 1995, Carlton Thornton and Michael Jordan instituted a civil action against their employer, Cleveland Wrecking Co., under *W.Va.Code* § 23–4–2, West Virginia's deliberate intention statute. Both men were laid off from their employment shortly thereafter, and, as a result, they amended their original complaints to include claims for wrongful discharge, under *W.Va.Code* § 23–5A–1 ("[d]iscriminatory practices prohibited").

Meanwhile, Cleveland Wrecking Co. was loaned several million dollars as part of an effort to ease some of its financial problems. For reasons unexplained, as part of the secured transaction, the lending institution failed to perfects its security interest in Cleveland Wrecking Co.'s personal property assets in West Virginia.

Cleveland Wrecking Co. eventually defaulted on the bank loan. A California corporation, "CWC Acquisition Corp.," ("CWC Acquisition") was formed for the purpose of buying Cleveland Wrecking Co.'s debt and security interests from the bank. CWC Acquisition foreclosed on the name "Cleveland Wrecking Co." and ultimately, began operating as Cleveland Wrecking Co. The *original* Cleveland Wrecking Co., meanwhile, became known as Delaware CWC Liquidation Corp.

In July 1995, attorney Robert Martin was hired to defend the interests of the new Cleveland Wrecking Co. in the deliberate intention and wrongful discharge litigation involving the company and Messieurs Thornton and Jordan. Ultimately, a jury awarded the pair compensatory and punitive damages totaling approximately $149,500.00. It is Defendant Martin's alleged post-trial negligence which is the subject of the legal malpractice claim later assigned to Thornton and Jordan and which is at issue in the instant certified question from the Circuit Court of Putnam County.

A judgment order in the underlying litigation was entered on April 28, 1998. On May 8, 1998, Defendant Martin, on behalf of his client, the new Cleveland Wrecking Co., served "Defendant's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for a New Trial." Defendant Martin did not file these post-trial motions with the Circuit Court of Putnam County until May 14, 1998. Defendant Martin was apparently unaware that, effective April 6, 1998, the West Virginia Rules of Civil Procedure were amended to require that the foregoing post-trial motions be *filed*, and not just served, "no later than 10 days after entry of judgment[.]" *W.Va. R. Civ. P.* 50(b). *See W.Va. R. Civ. P.* 59(b) Thus, under *W.Va. R. Civ. P.* 50(b) and 59(b), Defendant Martin's requests for post-trial relief were not timely filed.

Due to Defendant Martin's failure to timely file post-trial motions, Messrs. Thornton and Jordan, by counsel, obtained a writ of execution, pursuant to which they began levying on and taking possession of motor vehicles and demolition equipment owned by the original Cleveland Wrecking Co. Apparently, the new Cleveland Wrecking Co. had not yet perfected its security interest in these items.

Ultimately, representatives from the new Cleveland Wrecking Co. negotiated a settlement with Thornton and Jordan, which included not only a release of the levy on the company's vehicles and equipment, but also an assignment to Thornton and Jordan of the company's purported legal malpractice claims against Defendant Martin for damages caused by his failure to timely file post-trial

motions. As a result of this assignment, Thornton and Jordan filed a Complaint against Defendant Martin. Defendant Martin moved to dismiss the complaint, or alternatively, for summary judgment. Thornton and Jordan filed a cross motion for summary judgment on the issue of Defendant Martin's liability. The circuit court denied the parties' respective motions.

Thereafter, Defendant Martin filed a second motion for summary judgment on the ground that the assignment of the new Cleveland Wrecking Co.'s purported legal malpractice claim against Defendant Martin is not permitted as a matter of law. In an Order entered November 26, 2001, the Circuit Court of Putnam County denied Defendant Martin's motion for summary judgment and ordered that the disputed legal issues related to the assignment of legal malpractice claims be certified to this Court. By Order entered April 16, 2002, the following question was certified to this Court, pursuant to *W.Va.Code* § 58–5–2 and *W.Va. R.App. P.* 13:

> Is the assignment of a legal malpractice claim contrary to the public policy of the State of West Virginia and therefore void as a matter of law?
> Answer of the Circuit Court of Putnam County: No.

### *Garletts v. Aitcheson*

On January 22, 1999, Plaintiff Daniel Garletts sustained severe and permanent injuries when the automobile he was driving was struck head on by a rented automobile being operated by David Lee Donne. At the time of the accident, Mr. Donne's blood alcohol content was .167, which is over the legal limit.

Both drivers were insured by State Farm Mutual Automobile Insurance Co. ("State Farm"). State Farm learned Mr. Donne had been intoxicated at the time of the accident and, according to Plaintiff Daniel Garletts, also determined Mr. Donne was clearly at fault. Plaintiff Daniel Garletts made a claim for the $100,000 limits of liability under Mr. Donne's insurance policy.[1] State Farm offered Plaintiff the sum of $15,000.

Due to the severity of Plaintiff Daniel Garletts' injuries, which includes a brain injury, Plaintiff Daniel Garletts, his wife and four children instituted the underlying negligence and bad faith action. State Farm retained counsel to defend Mr. Donne and Mr. Donne retained separate counsel, Defendant Robert D. Aitcheson, for the purpose of pursuing a counterclaim against Plaintiffs.

Defendant Aitcheson filed a counterclaim against Plaintiffs alleging, *inter alia*, that Plaintiff Daniel Garletts "carelessly, recklessly and negligently" operated his vehicle left of center causing the subject accident, and seeking $250,000 in damages. Plaintiffs maintain, however, that Defendant Aitcheson "never made a demand for insurance proceeds from State Farm on his client's behalf and he never obtained the statement his client gave to the adjuster for Enterprise Rent–A–Car, in which Mr. Donne basically admitted fault. Mr. Aitcheson could have taken a few minutes to call State Farm's adjuster, but he admits he didn't do that either. Had he done that he could have learned of State Farm's clear liability determination and of the fact that his client was seriously intoxicated [at the time of the accident]." Brief of the Petitioners, p.3. According to Plaintiffs, Defendant Aitcheson failed to conduct any investigation into Mr. Donne's own liability in the accident and failed to attend his client's May 19, 2000 deposition.

On June 12, 2000, Defendant Aitcheson filed a motion to withdraw as Mr. Donne's counsel. On July 7, 2000, the circuit court entered an order dismissing, with prejudice, the counterclaim filed on behalf of Mr. Donne. Thereafter, Plaintiffs amended their complaint to include, among other allegations, the claim of malicious prosecution arising out of the dismissed counterclaim. Ultimately, Plaintiffs entered into a settlement agreement with Mr. Donne, which released him from the malicious prosecution claim in exchange for an assignment of, *inter alia*,

---

**1.** Plaintiff Daniel Garletts also sought to recover the underinsurance motorist benefits under his own State Farm policy.

any professional negligence claims he may have against Mr. Aitcheson. Mr. Donne also executed an authorization for the release of legal, insurance and medical documents generated in connection with the subject accident.

Pursuant to the assignment of rights, Plaintiffs again amended their complaint to include a claim for legal malpractice against Defendant Aitcheson based upon his representation of Mr. Donne in the underlying case. Defendant Aitcheson filed a motion for summary judgment, challenging the validity of the assignment of the legal malpractice claim. The issue was certified to this Court in the form of the following questions:

> Should courts determine the validity of the assignment of a legal malpractice claim on a case-by-case basis?

> If an attorney's client who is sued for malicious prosecution settles with the plaintiff under the terms in which the client receives a full release from the malicious prosecution claim in exchange for an assignment to the plaintiff of legal malpractice claims against the client's attorney who filed the prior suit, is the assignment void as against public policy of the State of West Virginia?

The Circuit Court of Berkeley County answered the first question in the affirmative and, similarly, answered the second question favorably to Plaintiffs.[2]

As indicated above, this case was consolidated with *Delaware CWC Liquidation Corp. v. Martin,* No. 30985, *supra,* by Order of this Court entered February 3, 2003.

## II.

## STANDARD OF REVIEW

The certified questions before this Court involve the novel legal issue of whether the assignment of a legal malpractice claim violates the public policy of the State of West Virginia. It is well settled that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo."* Syl. pt. 1,*Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). *See* Syl. pt. 1, *Williamson v. Greene,* 200 W.Va. 421, 490 S.E.2d 23 (1997). Accordingly, this Court's review of the certified questions presented is plenary.

## III.

## DISCUSSION

This Court is asked to address an issue of first impression, that is, whether the assignment of a legal malpractice claim violates the public policy of the State of West Virginia. The majority of courts that have resolved this issue as a matter of public policy[3] have concluded that legal malpractice claims are not assignable. We agree.

Most courts view the unique personal nature of the relationship between an attorney and his client to be the most compelling public policy reason for prohibiting the assignment of legal malpractice claims. *See Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 342 (Ind.1991) ("Our own conclusion that legal malpractice claims should not be assigned is based on ... our particular concern about ... the need to preserve the sanctity of the client-lawyer relationship[.]"); *Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson,* 250 Kan. 490, 827 P.2d 758

---

2. According to the Plaintiffs, their bad faith claims against State Farm have been settled, leaving Mr. Aitcheson as the only remaining defendant in this case.

3. Some courts have attempted initially to resolve the assignability question by first determining whether a claim for legal malpractice is considered a breach of contract claim or a personal injury claim. However, it is often difficult to classify the claim as one type or the other. *See e.g.,* syl. pt. 2, *Hall v. Nichols,* 184 W.Va. 466, 400 S.E.2d 901 (1990) (distinguishing a legal malpractice claim sounding in contract from a

legal malpractice claim sounding in tort). Thus, "[r]ather than straining to fit the claim into a category, we think the better approach is to resolve the question on public policy grounds." *Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith,* 922 S.W.2d 865, 868 (Tenn.1996). *See Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 341 (Ind.1991); *Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson,* 250 Kan. 490, 827 P.2d 758, 765 (1992); *Christison v. Jones,* 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (1980); *Wagener v. McDonald,* 509 N.W.2d 188, 190 (Minn.Ct.App.1993).

(1992); *MNC Credit Corp. v. Sickels,* 255 Va. 314, 497 S.E.2d 331, 334 (1998) (prohibiting assignments of legal malpractice claims "safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice. . . . [and] to do so would undermine the important [attorney-client] relationship[.]"); *Kiley v. Jennings, Strouss & Salmon,* 187 Ariz. 136, 927 P.2d 796, 800 (Ct.App.1996) (any such assignment would negate the attorney's fiduciary and ethical duty to his client because the assignee is not the client); *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (1976) (to allow the assignment would "embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client."); *Washington v. Fireman's Fund Ins. Co.,* 459 So.2d 1148 (Fla. Dist.Ct.App.1984) (agreeing with the majority of jurisdictions which prohibit assignments "because of the personal nature of legal services which involve highly confidential relationships."); *Christison v. Jones,* 83 Ill. App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8, 11 (1980) (prohibiting assignment due to "the personal nature of the [attorney-client] relationship and the duty imposed upon the attorney, coupled with public policy considerations surrounding that relationship[.]"); *Joos v. Drillock,* 127 Mich.App. 99, 338 N.W.2d 736 (1982); *Wagener v. McDonald,* 509 N.W.2d 188, 191(Minn.Ct.App.1993) (allowing assignment of legal malpractice claims "would be incompatible with the attorney's duty to act loyally towards the client . . . . and to maintain confidentiality.")

■■■■ It is beyond cavil that this Court recognizes the attorney-client relationship to be " " ' of the highest fiduciary nature, calling for the utmost good faith and diligence on the part of [the] attorney.' " " Syl. pt. 3, *Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993) (*quoting* Syl. pt. 2, *Rodgers v. Rodgers,* 184 W.Va. 82, 399 S.E.2d 664 (1990) and syl. pt. 4, *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 57 S.E.2d 736 (1950).). An attorney's nondelegable duty of loyalty to his client and the level of trust a client places in his attorney are also essential elements of the attorney-client relationship. *Lawyer*

*Disciplinary Bd. v. Artimez,* 208 W.Va. 288, 299, 540 S.E.2d 156, 167 (2000) (*citing W.Va. Rules of Prof. Conduct* Rule 1.7 cmt. *Loyalty to a Client* ). *See Id.,* 208 W.Va. at 300, 540 S.E.2d at 168 ("the trust a client places in his/her lawyer is so highly esteemed, and deemed so integral to a successful attorney-client relationship, that it has been afforded a status of privilege."). Therefore, in considering whether legal malpractice claims should be assignable, this Court is ever mindful of its role in ensuring that the sanctity of this confidential relationship is preserved and protected.

Other public policy considerations are also involved in determining whether legal malpractice claims should be assignable. Some courts have cautioned that permitting the assignment of legal malpractice claims would encourage the commercialization of such claims, *Alcman Services Corp. v. Bullock,* 925 F.Supp. 252, 258 (D.N.J.1996), *aff'd* 124 F.3d 185 (3rd Cir.1997), "would lead to baseless and excessive legal malpractice claims[,]" *Id.,* 925 F.Supp. at 258, *Roberts v. Holland & Hart,* 857 P.2d 492, 496 (Col.Ct.App.1993), which would burden the legal profession, the court system and the public, *Curtis v. Kellogg & Andelson,* 73 Cal.App.4th 492, 86 Cal. Rptr.2d 536, 545 (1999), and "would make insolvent, underinsured, judgment-proof defendants extremely unattractive clients, thereby making it harder for them to obtain legal representation." *Alcman,* 925 F.Supp. at 258–59. In addition, allowing such assignments would increase the risk of collusion between the assignor and assignee. *Coffey v. Jefferson County Bd. of Educ.,* 756 S.W.2d 155, 157 (Ky.Ct.App.1988) (holding assignment of defendant's legal malpractice claim as part of settlement in negligence action was void and describing the assignment as a "contrived and elaborate scheme.").

In the oft-cited case of *Goodley v. Wank & Wank, Inc.,* the California Court of Appeals summarized the foregoing public policy considerations as follows:

The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to eco-

nomic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden not only on the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client. *Id.,* 133 Cal.Rptr. at 87. *See e.g., Picadilly,* 582 N.E.2d at 342; *Can Do, Inc.,* 922 S.W.2d at 868; *MNC Credit Corp.,* 497 S.E.2d at 333–34; *Roberts,* 857 P.2d at 495–96; *Christison,* 39 Ill.Dec. 560, 405 N.E.2d at 11; *Wagener,* 509 N.W.2d at 191.

In contrast, a minority of jurisdictions have allowed the voluntary assignment of legal malpractice claims on a case-by-case, a position advocated by the plaintiffs/assignees in the two cases now before us. *See Richter v. Analex Corp.,* 940 F.Supp. 353 (D.D.C. 1996); *Thurston v. Continental Cas. Co.,* 567 A.2d 922 (Me.1989); *New Hampshire Ins. Co. v. McCann,* 429 Mass. 202, 707 N.E.2d 332 (1999); *Gregory v. Lovlien,* 174 Or.App. 483, 26 P.3d 180 (2001). These courts have refused to adopt a broad prohibition on such assignments because, they reason, the public policy concerns upon which the majority of jurisdictions rely are not implicated in every case. *See e.g., Gregory,* 26 P.3d at 184 (*citing Richter,* 940 F.Supp. at 357–58) ("An assignment of a [legal] malpractice claim by one corporation to another as part of a merger or acquisition does not present these con-

cerns."); *Thurston,* 567 A.2d at 923 ("The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like [this one] from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit.").

■ We are not persuaded by the reasoning of the small number of courts which have allowed the assignment of legal malpractice claims. It is of particular concern to this Court that the relationship between an attorney and his client remain a confidential, fiduciary relationship of the very highest character. Indeed, "[r]ules which discourage an attorney from acting loyally and confidentially should not be erected without very good cause." *Picadilly,* 582 N.E.2d at 343.

■ This Court holds each and every attorney to the inflexible requirement that he "diligently, faithfully and legitimately perform every act necessary to protect, conserve and advance the interests of his client." *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 657, 57 S.E.2d 736, 748 (1950). An attorney who deviates from this duty is subject to disciplinary action, *see Rules of Professional Conduct,* and/or civil liability, the latter of which may be pursued only by the client injured by his counsel's negligence or malfeasance. *See Armor v. Lantz,* 207 W.Va. 672, 681, 535 S.E.2d 737, 746 (2000) (plaintiff in legal malpractice claim must prove, *inter alia,* that he employed the defendant lawyer to represent him). To permit the assignment of a claim that is firmly rooted in the highly personal attorney-client relationship would denigrate both the legal profession and the justice system. We will not allow this most certain consequence. Accordingly, we hold that the assignment of a legal malpractice claim is contrary to the public policy of West Virginia; therefore, any such assignment is void as a matter of law.

### IV.

### CONCLUSION

■ In summary, based upon our holding that the assignment of a legal malpractice claim is contrary to the public policy of the

State of West Virginia and, therefore, void as a matter of law, we answer in the affirmative the certified question of the Circuit Court of Putnam County, in the case of *Delaware CWC Liquidation Corp. v. Martin,* No. 30985. Having determined that any assignment of a legal malpractice claim is prohibited, courts should not determine the validity of such assignments on a case-by-case basis. Therefore, we answer the first certified question of the Circuit Court of Berkeley County, in *Garletts v. Aitcheson,* No. 31113, in the negative, and the remaining certified question, in the affirmative.

Certified questions answered; cases dismissed.