In re: **Eugene E. BROWN and Debra A. Brown, Debtors.**

No. 02–53538.

United States Bankruptcy Court, N.D. West Virginia.

Sept. 1, 2006.

Opinion Denying Stay Sept. 29, 2006.

Mark D. Panepinto, Wheeling, WV, for Debtors.

## *MEMORANDUM OPINION*

PATRICK M. FLATLEY, Bankruptcy Judge.

Martin P. Sheehan, the Chapter 7 trustee (the "Trustee") for Eugene and Debra Brown (the "Debtors"), seeks court approval to release the Debtors' pre-petition cause of action against Ameriquest Mortgage Company ("Ameriquest") to the Debtors in exchange for a payment of $40,000. Ameriquest objects to the Trustee's proposed course of action on the grounds that the cause of action against it is not assignable, and even if it is, then the "sale" of the cause of action should be open to higher and better offers. Ameriquest also questions the source of the Debtors' proposed $40,000 payment and requests permission to conduct a Rule 2004 examination of the Debtors and their anticipated lender.

The court held telephonic hearings on these issues in Wheeling, West Virginia on July 11, August 15, and August 22, 2006. All issues are fully briefed and ripe for decision. For the reasons stated herein, the court will grant the Trustee's motion and deny Ameriquest's motion for a Rule 2004 examination.

## I. BACKGROUND

When the Debtors filed their Chapter 7 bankruptcy on October 24, 2002, they listed their principal residence at 123 Gamble Avenue, Wheeling, West Virginia as having a value of $60,000, and as being subject to a secured claim of $54,700 in favor of Ameriquest. Shortly after the Debtors' bankruptcy filing, Ameriquest obtained relief from the automatic stay to foreclose on the Debtors' residence. On February 3, 2003, the court granted the Debtors a discharge, and on February 21, 2003, the Debtors' case was closed.

On April 9, 2003, Ameriquest purchased the Debtors' residence at foreclosure; the Debtors however, did not immediately abandon the premises. In September 2003, Ameriquest filed an eviction action in the Circuit Court of Ohio County, West Virginia. The Debtors filed a counterclaim alleging, inter alia, lending improprieties by Ameriquest, and violations of the West Virginia Consumer Credit Protection Act. More specifically, the Debtors allege that Ameriquest attempted to collect a debt using threatening, coercive, oppressive, and abusive conduct; engaged in unfair or deceptive acts; engaged in intentional or negligent misrepresentation; breached its covenant of good faith and fair dealing; and caused intentional infliction of emotional distress to the Debtors due to its debt collection activities.

In 2006, the attorney representing the Debtors in their counterclaim against Ameriquest informed the Trustee about the litigation. The Debtors had not listed the lawsuit on their bankruptcy schedules and the Trustee was otherwise uninformed about its existence. Consequently, on April 25, 2006, the Trustee filed a motion to reopen the Debtors' bankruptcy case to administer the lawsuit for the benefit of the Debtors' pre-petition creditors. The court reopened the case, and the Trustee filed a notice to the Debtors' creditors to file claims.

The claims bar date in this case was August 4, 2006, and the total amount of the filed claims is $30,748, which includes Ameriquest's claim for $18,068. The Trustee has objected to Ameriquest's claim, in part,[1] and filed a report with the court that the $40,000 consideration given by the Debtors will be sufficient to pay all claims in the estate in full along with the related costs of administration. The Debtors also represent that if the Trustee ultimately does not have enough money to pay all allowed claims and costs of administration, then they are willing to increase the amount of their consideration to ensure full payment. The Debtors state that they do not have $40,000 to pay the Trustee; rather, the money will be paid from loan proceeds that the Debtors plan to receive from a private businessman.

## II. DISCUSSION

Ameriquest contends that the court should deny the Trustee's motion to release the Debtors' counterclaim back to the Debtors in exchange for $40,000 on the grounds that: (A) the cause of action against it is not assignable, (B) the pur-

---

1. Subsequently, the Trustee and Ameriquest file an agreed order that set the amount of Ameriquest's claim at $12, 718. With that reduction, the total claims filed against the estate are about $25,398.

chase price is insufficient to pay all claims in full and if "sold" then the asset should be auctioned, and (C) the source and terms of the Debtors' purchase funds is undisclosed and may violate West Virginia law.

## A. Transfer of Personal Injury Tort Claims

Ameriquest argues that the Debtors' counterclaim against it is a personal injury tort and is therefore not assignable by the Trustee under West Virginia law. *E.g.,* 6 Am.Jur.2d *Assignments* § 73 (2006) ("The right to bring a personal injury action even for fraud, cannot be assigned or subrogated, except by statute."). The Trustee argues that West Virginia law does not prohibit the sale of such litigation claims. *E.g., Currence v. Ralphsnyder,* 108 W.Va. 194, 151 S.E. 700, 702 (1908) ("[T]his Court will not nullify the contract merely because it savors of champerty under the common law . . . ."). Whether the Trustee's proposed course of action is labeled an "assignment," a "sale," an "abandonment for consideration," or some other moniker is immaterial in this case inasmuch as the effect of the transfer is to divest the bankruptcy estate's interest in the Debtors' counterclaim against Ameriquest to the Debtors themselves in exchange for full satisfaction of all claims against the estate.

■ "Maintenance" at common law is "an officious intermeddling in a suit that in no way belongs to the meddler, and signifies an unlawful taking in hand, or upholding of quarrels or sides, to the disturbance or hindrance of common right." *Davis v. Settle,* 43 W.Va. 17, 26 S.E. 557, 560 (1896). "Champerty" is a species of maintenance, and "is the unlawful maintenance of a suit in consideration of part of the matter in controversy." *Id.* Traditionally, at common law, maintenance and champerty of personal injury tort claims has been forbidden based on a policy that protected the injured party "so that an unrelated third-party cannot reap a windfall by paying the injured party a pittance for the claim and then prosecute litigation for injuries that the party never suffered." *Booth v. Moss (In re Moss),* No. 03–12672, 2005 WL 2100964, at *2, 2005 Bankr.LEXIS 1667 at *4 (Bankr.M.D.N.C. Aug. 12, 2005).

■ Even assuming, however, that the Debtors are purchasing litigation from the Trustee against Ameriquest, and further assuming that the Debtors are intermeddlers in a suit that does not belong to them, Ameriquest lacks prudential standing under West Virginia law to raise maintenance and champerty as a defense to the Trustee's proposed transfer of the bankruptcy estate's interest in litigation to the Debtors. In general, only the parties to the contract of maintenance or champerty have standing to assert those defenses/causes of action. *E.g., Work v. Rogerson,* 149 W.Va. 493, 142 S.E.2d 188, 194 (1965) (" 'Strangers to a champertous contract cannot take advantage of it; only a party to it can do so.' ") (citation omitted); *Irons v. Croft Hat & Notion Co.,* 86 W.Va. 685, 104 S.E. 111, 112 (1920) (same); *Davis,* 26 S.E. at 566 ("[A] stranger cannot set up this defense, as 'the taint of champerty only invalidates contracts as between the parties to the champerty.' ") (dissenting opinion); *but see Delaware CWC Liquidation Corp. v. Martin,* 213 W.Va. 617, 584 S.E.2d 473, 479 (2003) (determining that "the assignment of legal malpractice claims is contrary to the public policy of West Virginia; therefore, any such assignment is void as a matter of law.").

■ No public policy reason exists in this case to prevent the transfer of the bankruptcy estate's interest in the Debtors' claim against Ameriquest to the Debtors themselves. The Debtors' bankruptcy estate is the "intermeddler" in the Debtors' cause of action pursuant to § 541(a)(1)

of the Bankruptcy Code. 11 U.S.C. § 541(a)(1) (stating that the commencement of a bankruptcy case creates an estate that is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case . . . ."). Because the Trustee is transferring the Debtors' own interest in the lawsuit back to the Debtors, any concern relating to the trading in personal injury tort claims is vitiated. *See, e.g., Moss, supra.*

Notwithstanding the fact that it is the injured party that is seeking to recover on their own personal injuries against the alleged wrongdoer, Ameriquest asserts that the Trustee's proposed transfer should be denied based on the reasoning set forth in *United Techs. Corp. v. Gaines,* 225 Ga. App. 191, 483 S.E.2d 357, 358–59 (1997), wherein the court did not give effect to an assignment of a personal injury tort claim from the Chapter 7 bankruptcy trustee to the debtor. The Georgia court reasoned that personal injury tort claims could be assigned from the debtor to the bankruptcy estate under federal law (11 U.S.C. § 541(c)(1)) notwithstanding a specific state statute that prohibited such assignments. *Id.* at 358 (citing Ga.Code Ann. § 44–12–24). Once "title" to the cause of action was transferred to the bankruptcy estate, however, the court determined that Georgia law prohibited the assignment of that cause of action from the trustee back to the debtor. *Id.* at 359.

Here, however, West Virginia does not have a specific statutory prohibition on the anti-assignment of personal injury tort claims and resort must be made to common law. *See, e.g.,* W. Va.Code § 55–7–8a(f) ("Nothing contained in this section shall be construed to . . . give the right to assign a claim for a tort not otherwise assignable."). For the reasons set forth above, the transfer of a personal injury tort claim from the bankruptcy estate back to a debtor, which originally belonged to the debtor, does not violate any identifiable West Virginia policy that would prohibit the transfer based on the doctrines of champerty and maintenance. Moreover, the Georgia court itself seemed to recognize the infirmity of its *Gaines* decision in *Denis v. Delta Air Lines, Inc.,* 248 Ga. App. 377, 546 S.E.2d 805 (2001), when it allowed the bankruptcy trustee to abandon a personal injury claim to the debtor in exchange for a $125,000 payment, a factual result which, although analyzed on the basis of federal-state relations and not solely on Georgia law, is directly inapposite to its previous holding in *Gaines.*[2]

In sum, no party to the alleged champertous contract is complaining and, at least in the context of a bankruptcy proceeding, the transfer of a cause of action originally belonging to the Debtors back to the Debtors themselves in exchange for a payment of money to their bankruptcy estate does not violate any public policy prohibition against champerty and maintenance that may exist in West Virginia.

**B. Inadequacy of the Transfer Price & Auction Procedures**

Ameriquest argues that the stated consideration of $40,000 is insufficient to pay

---

**2.** Ameriquest also asserts that the Trustee cannot abandon an asset that has value. *See* 11 U.S.C. § 554 (reciting that the trustee may abandon property that is of inconsequential value and benefit to the estate). This argument is sophistic. Once the Debtors in this case pay the Trustee enough money to satisfy allowed claims and costs of administration in full, all assets of the estate are of inconse-quential value and benefit to the estate and must be returned to the Debtors. 11 U.S.C. § 726(a)(6). In this case, the fact that the Trustee would withhold transfer of the personal injury tort claim until all allowed claims and costs of administration are paid in full is merely a recognition of what would occur by operation of law.

all claims in full and, if the court allows a "sale" of the counterclaim, the counterclaim should be sold at auction to the highest bidder.

■ Regarding the adequacy of the consideration given to the Trustee for the transfer of the estate's interest in the counterclaim, the court notes the following: (1) the total amount of filed claims in this case as of the bar date was $30,748; (2) the Trustee and Ameriquest have agreed to reduce the amount Ameriquest's allowed claim from $18,068 to $12, 718, which reduces the total claims filed against the estate to about $25,398; (3) the Trustee estimates that $40,000 is sufficient to pay all claims in full along with the associated costs of administration; and (4) the Debtors voluntarily represented that they would pay additional funds, if needed, to ensure that all filed claims and costs of administration are paid in full. Based on these facts, the court finds that the consideration given by the Debtors is adequate and is sufficient to pay all claims in full.

■ Regarding Ameriquest's contention that the court should conduct an auction to sell the Debtors' counterclaim to the highest bidder, the court rejects the idea as being unnecessary. When the Trustee has enough money to pay all claims in full, any excess proceeds would be payable to the Debtors. 11 U.S.C. § 726(a)(6). Releasing the Debtors' counterclaim back to the Debtors themselves in exchange for satisfying—in full—the bankruptcy estate's interest in that asset is merely a method by which the Trustee may perform his duties of distributing property of the estate un-

der § 726 and to "collect and reduce to money property of the estate ... and close such estate as expeditiously as is compatible with the best interests of the parties in interest." [3] § 704(a)(1).

■ Moreover, Ameriquest's filed claim, to the extent allowed, will be paid in full; thus, Ameriquest is not suffering any injury by the Trustee's proposed course of action and lacks constitutional standing to object to the form of the proceeding. *E.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' ").

## C. Source of Funds

Finally, Ameriquest seeks a Rule 2004 examination to determine from whom the Debtors are obtaining the $40,000 post-petition loan and the terms of that loan agreement. The Debtors responded at the August 15, 2006 hearing that no written document had yet been prepared, but that the loan is to be made by a private businessman who will likely take a security interest in the proceeds of the Debtors' recovery against Ameriquest, if any. The Debtors stated that they were not "assigning" their personal injury tort claim to the anticipated lender.

**3.** Ameriquest objects to the form of the proceedings arguing that the Trustee's motion "To Release Asset to Debtors in Consideration of Payment" should be a motion to sell under 11 U.S.C. § 363 of the Bankruptcy Code. Ameriquest also objects that by "selling" the counterclaim back to the Debtors the Trustee is giving the Debtors an "uncapped" exemp-

tion. These arguments re unpersuasive. In this case, the form of the proposed action is immaterial because all allowed claims are being paid in full. Likewise, the Debtors are not being granted an "uncapped" exemption—in fact, the Debtors are not asserting any entitlement to an exemption in the proceeds.

Ameriquest is not a party to the proposed loan transaction and the court fails to see how Ameriquest will suffer any injury in fact should the Debtors execute the proposed financing. The money obtained is a post-petition loan to the Debtors, not the estate, and will be used to pay Ameriquest's allowed claim in full.[4] Moreover, the court is not required in this case to determine the validity of any purported security interest in possible litigation proceeds that the proposed lender may seek to obtain.

■ Nevertheless, a court has an independent duty to examine the proposed course of action to determine if it violates a public policy of the State of West Virginia. *See, e.g., Cooper v. Stump,* 217 W.Va. 744, 619 S.E.2d 257, 260 (2005) (finding that the circuit court erred in giving effect to a private agreement between two parties that violated the State's public policy); *Delaware CWC Liquidation Corp.,* 584 S.E.2d at 479 (allowing an objection to be made to the assignment of legal malpractice claims by a non-party to the assignment on the basis that the assignment was contrary to the public policy of West Virginia and void as a matter of law).

■ No public policy prohibition exists in West Virginia that precludes a party from taking a security interest in tort litigation proceeds once the tort claim is reduced to judgment *E.g.,* W. Va.Code §§ 46–9–109(d)(12) ("This article does not apply to ... (12) An assignment of a claim arising in tort ... but sections 9–315 and 9–322 apply with respect to proceeds and priorities in proceeds ...."); 46–9–109 Official Comment 15 ("[O]nce a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort."); *Lustig v. Peachtree Settlement Funding, LLC (In re Chorney),* 277 B.R. 477, 487–88 (Bankr.W.D.N.Y.2002) ("[O]nce the Debtor entered into the Settlement Agreement his personal injury tort claim ... was extinguished and it was replaced by the contractual obligation ...."); William F. Savino and David S. Widenor, *2002–2003 Survey of New York Law: Commercial Law,* 54 Syracuse L.Rev. 855, 927 (2004) ("[W]here a suit (even for tort) becomes extinguished any replaced by a contractual obligation for settlement payments, Article 9 will apply under ... Revised Section 9–109 .... During litigation, however, Article 9 will [not apply to personal injury tort claims]."); 1 M.J., *Champerty and Maintenance,* § 2 (2004) ("[T]he law has always recognized the right of one to assist the poor in commencing or further prosecuting legal proceedings.").

Therefore, it does not appear that the Debtors' proposed course of action in obtaining a loan from a private businessman, secured by a purported interest in the anticipated, but presently intangible, payment that represents the proceeds of the

---

4. Ameriquest asserts that the Debtors' anticipated lender may be able to assert an administrative expense claim against the estate pursuant to 11 U.S.C. § 503(b)(1) ("[T]here shall be allowed administrative expenses ... including—(1)(A) the actual, necessary costs and expenses of preserving the estate ...."). *See In re Tropea,* 352 B.R. 766 (Bankr. N.D.W.V. 2006) (granting an administrative expense claim to an unsuccessful stalking horse bidder in the absence of a contractual break-up fee when the stalking horse bidder advanced funds to prevent foreclosure, prevent a tax sale, and initiated the bid process that ultimately created a greater value for the estate). In this case, however, the Debtors attorneys executed a written agreement with the Trustee that they will not seek any payment from the estate and the anticipated lender is not entering a transaction with the estate. The Chapter 7 Debtors are not "debtors in possession" and the Trustee is not anticipated to be a party to the loan transaction.

Debtors' litigation against Ameriquest, violates any West Virginia public policy such that the court should clean its hands of the entire transaction. Because Ameriquest is not a party to the proposed transaction, has not shown that the transaction will have any injurious effect on it, and has not shown any public policy reason to prohibit the implementation of the proposed agreement, the court will deny Ameriquest's request to take a Rule 2004 examination of the Debtors to investigate what the exact terms of the loan might be.

## III. CONCLUSION

The court will grant the Trustee's motion to transfer the Debtors cause of action against Ameriquest to the Debtors themselves in exchange for a payment which will be sufficient to pay all allowed claims against the estate and the costs of administration in full. The court will deny Ameriquest's request for a Rule 2004 examination of the Debtors.

The court will enter a separate order pursuant to Fed. R. Bankr.P. 9021.

## MEMORANDUM OPINION

Ameriquest Mortgage Company ("Ameriquest") requests that this court stay the effect of its September 1, 2006 Memorandum Opinion and Order pending its appeal of the court's decision. The court's ruling permitted Eugene and Debra Brown (the "Debtors") to pay their Chapter 7 trustee, Martin P. Sheehan (the "Trustee"), enough money to satisfy all claims against their bankruptcy estate in full, along with all costs and expenses of administration, in return for transferring the estate's interest in the Debtors' own lawsuit against Ameriquest back to the Debtors themselves.

The court held a hearing on Ameriquest's Motion to Stay Pending Appeal in Wheeling, West Virginia, on September 20, 2006, at which time the court allowed the parties until September 26, 2006, to submit supplemental briefing. That briefing is now complete and Ameriquest's Motion is ripe for review. For the reasons stated herein, the court will deny the Motion.

## I. BACKGROUND

The facts of this case are fully set forth in the court's Memorandum Opinion of September 1, 2006, and will not be repeated here. In short, the Debtors have a claim against Ameriquest arising out of Ameriquest's pre-petition and post-petition conduct that was not disclosed on their bankruptcy petition. When the Trustee learned about the asset, the Trustee reopend the Debtors' case, and then proposed to transfer the estate's interest in the Debtors' lawsuit to the Debtors themselves in exchange for enough money to pay all allowed claims and costs of administration in their bankruptcy case. The court approved the Trustee's proposed course of action on September 1, 2006, over Ameriquest's objection.

On September 11, 2006, Ameriquest filed a notice of appeal of the court's September 1, 2006 ruling, and filed its motion for a stay of that decision pending appeal. On September 14, 2006, the court granted Ameriquest a temporary stay of its order pending an evidentiary court hearing, which the court held on September 20, 2006. All parties were afforded the opportunity to present evidence, testimony, and argument at the hearing.

## II. DISCUSSION

▉▉▉▉ To be entitled to a stay pending an appeal,[1] Ameriquest must meet the

---

1. Ordinarily, a stay of an action pending an      appeal is governed by Fed.R.Civ.P. 62; how-

four-part test set forth by the Fourth Circuit: "a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir.1970). *See also In re Convenience USA, Inc.*, 290 B.R. 558, 562 (Bankr. M.D.N.C.2003) (same); *In re Symington*, 211 B.R. 520, 522 (Bankr.D.Md.1997) (same). These factors are not to be rigidly applied, and require a determination based on the individual circumstances of a particular case. *E.g., Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."). For example, if the irreparable harm in not granting a stay pending an appeal is great, then less weight is to be afforded to the movant's likelihood of success on the merits of an appeal. *E.g., Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir.2002) ("The strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. However, in order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted. In assigning weight to each factor, a court will seek to balance the harm to the movant against the harm to other parties."); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991) ("As the balance tips away from the [movant on its showing of irreparable harm], a stronger showing on the merits is required."); *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D.Va. 2000); ("If the balance tips towards the movant, he need show only substantial and serious questions as to merits of the case. Where the harms are more evenly balanced, however, the movant must make a strong showing that success on the merits is likely.").

## A. The Merits of the Appeal

■ Ameriquest asserts that this court's approval of Trustee's transfer of the estate's interest in the Debtors' litigation claim against Ameriquest, to the Debtors themselves, in exchange for enough money to satisfy all claims against the estate and costs of administration in full, is contrary to applicable law for the reasons it articulated in the underlying litigation.

■ "[O]n an application for a stay or injunction pending appeal, one of the considerations should be whether the petitioner has made a strong showing that he is likely to prevail on the merits of his appeal." *Miltenberger v. Chesapeake & O.R. Co.*, 450 F.2d 971, 974 (4th Cir.1971). In making this determination, a court is in

---

ever, the order that Ameriquest is appealing originated from a contested matter in the Debtors' bankruptcy case under Fed. R. Bankr.P. 9014, which makes Rule 62 inapplicable to the proceeding unless ordered otherwise by the court. Despite the fact that Rule 62 is not directly applicable to contested matters, bankruptcy courts have used the Rule 62 standards in determining whether a stay of an action should be granted while a matter is on appeal. 12 *Moore's Federal Practice—Civil*, § 62.32 (2006) ("Although it is not specifically stated, Rule 62 has been applied in bankruptcy cases as well."); *see also* Fed. R. Bankr.P. 8005 ("A motion for a stay of the judgment, order, or decree of a bankruptcy judge ... must ordinarily be presented to the bankruptcy judge in the first instance.").

no way "decid[ing] any of the substantive issues which will be reached on appeal or express[ing] any view on the ultimate merits of the appeal." *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir.1970). In looking at the substantive merits of an appeal, a court " 'may properly stay [its] own orders when [it has] ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.' " *Peck v. Upshur County Bd. of Educ.*, 941 F.Supp. 1478, 1481 (N.D.W.Va.1996) (citation omitted), *aff'd in part and rev'd in part*, 155 F.3d 274 (4th Cir.1998).

In this case, the reasons for the court's decision to allow the Trustee to transfer the bankruptcy estate's interest in the Debtors' lawsuit against Ameriquest to the Debtors themselves is set forth in its Memorandum Opinion of September 1, 2006, and will not be reiterated here. The court does not believe that Ameriquest is likely to prevail on the merits of its appeal, especially considering the serious questions regarding its standing to object to the Trustee's contemplated course of action, and the fact that its allowed claim in the Debtors' bankruptcy proceeding is to be fully satisfied.[2] Accordingly, this factor does not weigh in favor of Ameriquest.

## B. Irreparable Injury to Movant and Other Parties

Ameriquest argues that it will suffer an irreparable harm unless the court grants its motion for a stay pending its appeal on the grounds that—once the Trustee collects the money from the Debtors in exchange for releasing the estate's interest

in their lawsuit—the Trustee will then disburse that money to pay the allowed claims against the Debtors' bankruptcy estate. Likewise, Ameriquest asserts that statutory or equitable mootness may effectively deny it a right of appeal.

The Fourth Circuit has stated that a showing of irreparable harm resulting from the absence or imposition of a stay pending appeal is the most important factor in a court's analysis. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir.1997) ("Under this hardship balancing test, the first two factors regarding the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted are the most important."). Before balancing the harms between the movant and the non-movant, however, the movant must make a " 'clear showing' of irreparable injury absent preliminary injunctive relief" and only then is the court " 'to balance the 'likelihood' of harm to the' [non-movant] from the grant of such relief." *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir.1992) (citation omitted).

In this case, Ameriquest has not shown any injury to itself as a result of the implementation of the court's September 1, 2006 Order. Indeed, under the court's order, Ameriquest will be the recipient of approximately $12,718 should its motion be denied—if the stay is granted, then it will receive nothing until there is a final adjudication of this case. The only harm in this case asserted by Ameriquest as a result of the court's September 1, 2006 order is the harm resulting to the Debtors

---

2. Ameriquest cites *Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380 (2nd Cir.1997) for the proposition that a creditor to a bankruptcy proceeding has standing to appeal a sale order. *Gucci*, however, is not a case where the creditors of the estate were receiving 100% of their claims as a result of the

sale. In fact, there are $202,987,606.74 in unsecured claims against the Paolo Gucci estate alone, Case No. 94–40614 (Bankr. S.D.N.Y.), and the sale in controversy was only for $3,300,000. Therefore, *Gucci* is inapposite.

should the court's ruling be in error.[3] The Debtors, however, are not complaining of any injury. Indeed, Ameriquest's request for a stay may put the bankruptcy estate's interest in the Debtors' claim against Ameriquest in jeopardy.[4]

Apart from the merits of the court's September 1, 2006 order, Ameriquest argues that it will suffer an irreparable harm should the court not grant it a stay pending an appeal on the grounds of statutory or equitable mootness. *See, e.g.,* 11 U.S.C. § 363(m) ("The reversal or modification on appeal of an authoriz[ed sale] . . . does not affect the validity of a sale . . . to an entity that purchased the . . . such property in good faith . . . ."); *Pittsburgh Food & Bev. v. Ranallo,* 112 F.3d 645, 650 (3rd Cir. 1997) (" 'In the case of a bankruptcy sale, the failure to obtain a stay of the sale, pending appeal, allows the sale to be completed, thus preventing an appellate court from granting relief and thereby rendering the appeal moot.' ") (citation omitted); *In re Continental Airlines,* 91 F.3d 553, 558–59 (3rd Cir.1996) (" '[A]n appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.' ") (citation omitted).

Without passing on the merits of statutory or equitable mootness argument, and without a finding that the transfer proposed by the Trustee falls under the moniker of a "sale" as opposed to some other type of transaction, the court notes that a possibility exists that Ameriquest's appeal could become moot. Before the appeal can become moot under § 363(b) and (m) of the Bankruptcy Code, however, the court must first determine that the the Trustee's transaction with the Debtors is a bankruptcy "sale" and that the Debtors are good faith purchasers. This court has not made either determination. In fact, the Trustee's motion was entitled "Motion to Release Asset to Debtors In Consideration of Payment" and it nowhere references § 363 of the Bankruptcy Code.

■ Furthermore, for equitable mootness to apply, the transactions undertaken must be of sufficient complexity such that they cannot be unwound. *E.g., Lowenschuss v. Selnick (In re Lowenschuss),* 171 F.3d 673, 678 (9th Cir.1999) ("We disagree [that the appeal is equitably moot] because this case does not present transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply."). Here, there are only eight allowed claims against the estate, totaling $25,398, to be paid by the Trustee. Ameriquest holds the largest claim ($12,718). Based on these facts, the possibility exists that either the statutory or equitable mootness doctrines articulated by Ameriquest will apply. Thus, the only harm to Ameriquest by a failure to stay the court's September 1, 2006 Order pending an appeal is that Ameriquest's appeal may be subject to a future claim of mootness. " '[A]n appeal being rendered moot does not itself constitute irreparable harm.' " *In re TWA,* No. 01–56, 2001 Bankr.LEXIS

---

3. Ameriquest argues that the Debtors will suffer a harm because the Debtors will have borrowed money to pay the Trustee for what it alleges to be an illegal transaction. Once the Trustee receives the money, Ameriquest argues, he will disburse those funds to the Debtors' creditors.

4. The Debtors' State court counsel represented that Ameriquest is seeking dismissal of the Debtors' State court counterclaim against it on the basis that the claim belongs to the bankruptcy estate—not the Debtors—and that the Debtors lack standing. The Debtors counsel further represented that should the State case be dismissed, then it is possible that the bankruptcy estate could lose its property interest in the counterclaim.

723 at *28–29 (Bankr.D.Del. Mar. 27, 2001) (citation omitted). *See also In re Kmart Corp.*, No. 02–C–9257, 2002 WL 31898195, at *2, 2002 U.S. Dist. LEXIS 24851 at *3–4 (N.D.Ill.Dec. 30, 2002) (same); *Virginia Dep't of Med. Assistance Servs. v. Shenandoah Realty Partners (In re Shenandoah Realty Partners)*, 248 B.R. 505, 510 (W.D.Va.2000) (same); *In re Bd. of Dirs. of Multicanal S.A.*, No. 04–10280, 2005 Bankr.LEXIS 1865 at *6 (Bankr.S.D.N.Y. Jan. 6, 2005) (same). Therefore, the court's consideration of the injury to the moving and non-moving parties should the court not grant or deny a stay pending appeal does not weigh in favor of Ameriquest.

## C. Public Interest

Finally, Ameriquest asserts that the public interest will be served if the court's decision is stayed pending Ameriquest's appeal on the basis that the public is best served by ensuring that a legally appropriate and final decision is reached before parties are permitted to engage in transactions that cannot be undone, and/or costs are incurred that cannot be recouped.

The appellate process is in place to ensure that a legally appropriate and final decision is reached. Moreover, the possible risk of disgorging payments made on allowed claims against the estate (including Ameriquest's claim) is not one that is borne by Ameriquest; it is borne by the Debtors, and they urge the court to deny Ameriquest's motion. The public interest favors a party paying his or her just debts, and the expeditious administration of bankruptcy estates; the creditors in this case have already waited approximately four years for payment. *See* 11 U.S.C. § 704(a)(1) ("The trustee shall collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interests of

the parties in interest...."). Therefore, the public interest does not weigh in favor of granting Ameriquest's motion for a stay pending appeal.

## III. CONCLUSION

Weighing all of the above factors, the court concludes that Ameriquest is not entitled to a stay pending its appeal. Therefore the court will deny the Motion.

A separate order will be entered pursuant to Fed. R. Bankr.P. 9021.